## No. 2598.

### Second Circuit

---

## BAKER v. TEXAS PIPE LINE COMPANY

---

(June 30, 1926, Opinion and Decree.)
(Oct. 4, 1926.   Rehearing refused.)
(Nov. 29, 1926.   Writs of Certiorari and Review denied by Supreme Court.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Master and Servant Par. 158.**
Under the Workmen's Compensation Law of Louisiana an injury sustained by an employee immediately after the close of the day's work and while he is still on the employer's premises and in the act of retiring therefrom, arises out of and in the course of his employment.
Bullimore vs. Carr Foundry Co., 132 Md. 491.
Jones vs. La. Cent. Lmbr. Co., La. Cts. of App. Ad. Sheets, No. 4, 1063.
Provost vs. Gheens Realty Co., 151 La. 508, 92 South. 98.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. F. X. Ransdell, Judge.

Action by Marion L. Baker against Texas Pipe Line Company.

There was judgment for defendant and plaintiff appealed.

Judgment reversed.

Vernis Morgan, of Shreveport, W. H. Cook, of Shreveport, attorneys for plaintiff, appellant.

Wise, Randolph, Randall and Freyer, of Shreveport, attorneys for defendant, appellee.

### STATEMENT OF THE CASE.

REYNOLDS, J.   Plaintiff sues defendant under the workmen's compensation law for $20.00 per week for not exceeding 300 weeks, commencing May 27, 1925, with legal interest on each installment from its maturity until paid, and $250.00 for physician's services and medicines.

He alleges that on the date mentioned he was in the employ of defendant at a daily wage of $4.50 and while performing services arising out of an incidental to his employment he sustained injuries, consisting of a broken leg, lacerations of the body, and a strained and lacerated ankle, that temporarily totally disables him to do work of any reasonable character.

He alleges that he had finished the day's work and put away his tools in a warehouse of defendant's in an enclosure and

attempted to get upon a moving motor truck of defendant's leaving the enclosure for Oil City, where he resided, for the purpose of riding to his home, and that before he had fully gotten on the truck his body came in contact with a post of the gate of the enclosure as the truck was passing through the opening and was thereby knocked from the truck and fell on a cattle guard and was injured.

Defendant denied liability, and alleged that plaintiff was injured some time after five o'clock while attempting to board a truck that was leaving its premises; that the truck was not at the time engaged in any service for or in connection with defendant's business; that the truck had been hired by defendant from its owner who provided a driver therefor; and that the truck had not been and was not being used for the purpose of transporting plaintiff or defendant's other employees.

On these issues the case was tried and there was judgment rejecting plaintiff's demand and he appealed.

OPINION.

The first question to be decided is whether, under the circumstances shown by the evidence, defendant is liable to plaintiff under the workmen's compensation law.

The accident in which plaintiff received his injuries occurred immediately after the close of the day's work and while plaintiff was leaving defendant's premises. His account of how it happened is as follows:

(Testimony, page 12):

"Q. I will ask you to state concerning the injury in question, I will ask you to state about as near as you can approximately the time of day it occurred?
"A. It was right after five o'clock.

(Testimony, page 13):

"Q. Right after five o'clock?
"A. Little before or little after, cannot say, had no time piece myself.

*   *   *

"Q. At the time you were actually hurt, what were you doing at that time?
"A. I jumped on the side of a truck to go to Oil City, started by the * * * out of the gate and a post knocked me off.

*   *   *

"Q. I will ask you if you had put up your tools for the day's work?
"A. Yes, sir.
"Q. Where did you put them?
"A. In the tool house around the corner.
"Q. What is that commonly called, the warehouse?
"A. Yes, sir, tool house.

*   *   *

"Q. At the time you were injured, I will ask if you were proceeding on or off the premises of the defendant; were you going to or from work?
"A. Going from work.

*   *   *

"Q. I will ask if you were on the outside of the yard, on the outside of the enclosure commonly used by the Texas Pipe Line Company?
"A. When I started to get on the truck I was inside.
"Q. Then what happened?
"A. Started off and I jumped on the truck, I had my coat half on and half off, could not get it on, the truck started off when I went to get on and I went through the gate post.

*   *   *

"Q. Before you got to the gate—did you get on the truck—state whether or not you got on the truck?
"A. About half way.
"Q. Then what happened?
"A. Hit the gate post, got knocked off and went through the cattle guard.
"Q. What kind of position were you in when you hit the gate?
"A. Hanging on my stomach; could not get on or off."

Defendant's witnesses testified that at the time of the accident plaintiff had his coat partly on and partly off and had run some little distance to catch the moving truck and caught up with it just as it was about to pass through the gate and put his foot on part of the truck to lift himself up on it and his foot slipped off and he fell into the cattle guard.

We do not think it material so far as defendant's liability is concerned whether plaintiff was knocked off the truck by his body coming in contact with the gate post or whether he slipped off after having gotten on it. The evidence shows that plaintiff was leaving his employer's premises at the close of the day's work and that the entrance at which he was hurt was one commonly used by defendant's employees in leaving the premises, whether walking or riding.

Defendant insists that under the authority of Wyatt vs. Alabama Petroleum Company, 2 La. App. 499; it is not liable.

In our opinion that case and the case at bar are not analogous.

In the Wyatt case, the employee, at the time he was injured, had finished the day's work and left the premises of the employer, had travelled from a quarter to a half mile from his place of work, had crossed Dorcheat Bayou, and had turned aside from the path leading from his place of work to his boarding house.

In the present case, plaintiff had just finished the day's work and was leaving the premises of his employer and had not loitered on the premises or otherwise delayed his departure, when the accident occurred.

The usual rule followed in Workmen's Compensation cases appears to be that a man's employment does not begin until he has reached the place where he is to work or the scene of his duty and does not continue after he has left the premises of his employer.

Bradbury, Workmen's Compensation, 3rd ed. 468.

And it is ordinarily held that if an employee is injured on the premises of the employer in going to or from work he is entitled to compensation for such injury.

Honnold, Workmen's Compensation, paragraph 122.

Bradbury, Workmen's Compensation, 3rd ed. 473, and authorities cited.

The employment is not limited to the exact moment when the workman reaches the place where he begins his work or to the moment when he ceases that work.

We are convinced that, under all the circumstances of this case, the accident complained of arose out of and was incidental to plaintiff's employment.

Baltimore Car Foundry Co. vs. Rukicata, 131 Md. 491, 104 Atl. 157; 4 L. R. A. 115.

Provost vs. Gheens Realty Co., 151 La. 508, 92 South. 98.

Myers vs. La. Ry. & Nav. Co., 140 La. 937, 74 South. 256.

Lagrone vs. McIntyre Lumber Co., 1 La. App. 564.

This brings us to the question of damages.

Immediately after the accident the plaintiff, under the direction and care of defendant, was sent to a doctor who treated his injuries; but the treatment was not a success, and later they were trated by Doctor Slicer.

Dr. E. L. Sanderson, a witness for defendant, who saw plaintiff at the time Doctor Slicer did, testified, page 58:

"Q. What condition did you find his leg in?

"A. Well, when he came to us he had on a splint, which we removed, and found that his leg had swollen enormously, to such an extent the circulation was cut off and the leg was covered with blebs, large blisters, and the skin was breaking down; in other words, it looked like gangrene was setting in. We could not make a very careful examination because of the enormous swelling and the condition of his leg; we thought the best thing to do would be to treat it to keep from losing the leg, so there was no effort made to reset the leg. The whole leg was as hard as could be."

The plaintiff testified, pages 19 and 20:

"Q. I will ask you do you have free use of that leg?

"A. No, sir.

"Q. Does it ever pain you?

"A. All the time.

"Q. I will ask you to state the circumstances in which you suffer pain from that leg?

"A. From this ankle where it is broke at cannot lift, natural walk, ordinary walk, and to lift anything, cannot lift it.

"Q. Can you put your weight on it and walk along without pain?

"A. No, sir."

This evidence satisfies us that plaintiff is entitled to judgment for the amounts claimed by him in his petition, subject to credit for the amounts paid by defendant for doctors, surgeons, medicine and hospital bills, not exceeding $250.

For the reasons assigned, it is therefore ordered, adjudged and decreed that plaintiff, Marion L. Baker, do have and recover judgment against the defendant, Texas Pipe Line Company, Inc., for the sum of two hundred and fifty dollars, less a credit of whatever amounts defendant may have paid out for medicines, doctors, surgeons and hospital charges, not exceeding that

amount, and for the further sums of twenty dollars per week, during his disability, not exceeding three hundred weeks, the first payment being decreed due May 27, 1925, with legal interest on each installment from its maturity until paid; together with all costs in both courts.