This suit under the Workmen's Compensation Act, No. 20 of 1914, as amended, is brought by the widow of Wm. Edwin Smith, an employee of the Higgins Industries, Inc., who was killed in an automobile accident which occurred while on his way home from work. He was riding in a motor bus owned and operated by Higgins Industries, Inc. for the purpose of transporting employees between the manufacturing plant in which they were employed in New Orleans and the various localities in which they lived. The defendants are Higgins Industries, Inc., the employer, and Maryland Casualty Company, the insurance carrier of the Higgins Company.
Defendants do not deny that Smith was an employee of the Higgins Company and that he was killed in the said accident which took place some 40 or 50 miles from the place of employment and counsel have agreed as to the rate of pay at which Smith was employed at the time of his death and as to the amount of compensation to which the widow is entitled, if compensation is due. They have also agreed, if compensation is due, that there should be an allowance of $150 to cover burial and incidental expenses.
Defendants, however, deny all liability, contending that the accident cannot be said to have occurred in the course of employment nor to have arisen out of it for the reason that, though the bus in which Smith was riding was owned and operated by the Higgins Company, all of the employees, including Smith, who made use of it in going to and from work, were required to pay regular fares and were, therefore, passengers for hire.
In addition to her main demand, plaintiff contends that because the insurer, through its adjuster, paid to her $3,000 in settlement of any claim which she may have had and then attempted to point to that settlement as creating an estoppel which should prevent her from making any claim in compensation, defendants have rendered themselves liable for a penalty of 50 per cent of such amount as may be due to her in compensation, if any compensation is due.
In the Civil District Court for the Parish of Orleans there was judgment for plaintiff for 300 weeks at $23.35 per week, which it is admitted is correct if defendants are liable in compensation and if the penalty is due. The judgment also included an award of $150 to cover burial and incidental expenses. In the judgment the defendants were given credit for the $3,000 which had been paid by the insurer to Mrs. Smith in settlement.
Defendants have appealed.
There is very little dispute as to the facts and we find them to be as follows: During the recent World War II the Higgins Company operated a large boat building establishment in New Orleans and found it difficult to obtain the tremendous number of employees of all kinds which were necessary for the operation of the plant. It therefore bought and put into operation many large passenger buses; running them on more or less regular schedules to outlying points and settlements and in these buses transported back and forth all employees who found it necessary or convenient to make use of them in going to and from work.
While the Higgins Company required those employees who made use of the buses to pay fares, it is clearly shown by the record that these fares were insufficient to defray the cost of operating the buses and that, therefore, in their operation the Higgins Company sustained a substantial loss.
It appears too that many employees used other means of transportation but that the deceased, Smith, who lived in Madisonville, *Page 353 
La., had no other means of going to and from work, and, therefore, could not have continued in the employ of the Higgins Company had the buses not been operated.
It is shown also that in order to ride in one of these buses, it was necessary to be an employee as well as to pay fare. The record shows that at one stage in its operation, the Higgins Company permitted its drivers to pick up prospective employees and bring them to New Orleans without requiring the payment of fares provided these persons intended to come to New Orleans to seek employment by the Higgins Company.
We cannot tell from the record whether a labor employment agent of the Higgins Company called upon Smith and, in an effort to induce him to work, promised him that the bus would be available for his daily trips, or whether Smith merely knew that the buses were in operation and that therefore, if he obtained employment from the Higgins Company, he would find them available. At any rate it is shown that for some time before Smith was employed it was well known that the bus in which Smith was riding when killed was being operated on regular schedule between New Orleans and Madisonville and other near-by places.
[1, 2] The legal question presented by the above recited facts is a very interesting one. We approach it with a recognition that the primary or fundamental rule is that, in general, an accident which takes place when an employee is going to or from work does not occur in the course of the employment and does not arise out of it. In Walker v. Lykes Brothers-Ripley S. S. Co., La. App., 166 So. 624, 625, we said: "* * * it is a general rule, in workmen's compensation cases, that the injury suffered by an employee in going to and returning from his employer's premises, where the work of his employment is carried on, does not arise out of his employment so as to entitle him to compensation. See Ruling Case Law, Permanent Supplement, vol. 8; Thibodeaux v. Yount Lee Oil Co., 13 La. App. 591, 128 So. 709; Voehl v. Indemnity Ins. Co. of N. A., 288 U.S. 162, 53 S.Ct. 380-382, 77 L.Ed. 676, 87 A.L.R. 245."
See also Crysel v. R. W. Briggs Co., La. App., 146 So. 489; Bass v. Shreveport-Eldorado Pipe Line Co., 4 La. App. 107; Boutte v. R. L. Roland Son et al., 15 La. App. 530, 132 So. 398; Nugent v. Lee Lumber Company, 4 La. App. 371; Thompson et al. v. Glen Hill Gravel Co., 19 La. App. 854, 141 So. 797. But in that case we recognized that there is a well-established exception to this rule where the employee is being transported to and from the place of work in a vehicle furnished by the employer "as an incident to the employment." "One departure occurs when the employer furnishes transportation to the employee to take him to work or to return him from work as an incident to the employment. In such case it is held that an accident occurring to the employee while riding in the vehicle of the employer is compensable, as the transportation provided by the employer is impliedly a part of the employment contract. See Thompson v. Bradford Motor Freight Line, La. App., 148 So. 79; Keyhea v. Woodard-Walker [Lumber] Co., La. App., 147 So. 830; Baker v. Texas Pipe Line Co., 5 La. App. 25." Defendants argue that the above quoted exception to the general rule has no application where a fare is paid and that if such a fare is paid a different legal situation results, and that the employee who pays the fare becomes a passenger for hire with all the rights of such a passenger; that he thus loses his character as an employee with the necessary result that if an accident happens while he is riding in such vehicle, after paying a fare, the accident cannot be held to have occurred in the course of employment nor to have arisen out of it.
[3] In nearly all of the cited cases the employee, in going to or from work, rode only a short distance. For instance, in the Comeaux case (Comeaux v. Southcoast Corporation) La. App., 175 So. 177, the employee was being transported to and from work in a cane field, and obviously the ride was a very short one, whereas here the deceased lived some 50 or 60 miles from the place of work and was killed while 40 or 50 miles from the establishment. But we see no distinction on this ground and therefore, unless the distinction lies in the fact that here the fare was paid, then our views as *Page 354 
expressed in that and other cases must be reaffirmed here.
[4] We find little in the jurisprudence of this state and, in fact, little elsewhere which directly touches upon the very narrow legal question which is raised by the fact that here the employee paid a fare for each ride in the bus.
We notice at once that the Higgins Company in putting the buses into operation concededly did not make itself a common carrier nor did it comply with the rules and regulations of the Public Service Commission nor with the rules and regulations of the Interstate Commerce Commission. We notice also that though it fixed the rates at which the employees might ride, these rates were not sufficient to pay the actual cost of operating the buses and that therefore it cannot be said that it was in the business of transporting passengers for hire. It is clear that it was actuated not by a desire to obtain a return from the operation of the buses but by the necessity of obtaining and retaining employees; that the buses were operated to tempt workmen, who might have worked elsewhere, to go to the plant of the Higgins Company instead. We conclude that these buses were operated as "an incident to the employment", and that seems to be the determining factor in deciding whether an accident, which occurs while an employee is riding in such a bus, takes place in the course of the employment and arises out of it. Notice our language in Walker v. Lykes Brothers-Ripley S. S. Co., supra, wherein we said that a departure from the general rule that an employee riding to and from work is not within the protection of the act unless he is riding in a vehicle furnished by the employer "as an incident to the employment."
Many cases are cited by counsel. We note two. California Casualty Indemnity Exchange v. Industrial Accident Commission et al., 21 Cal.2d 461, 132 P.2d 815, relied upon by plaintiff. Stimal v. Jewett Co. et al., 205 App. Div. 170,199 N.Y.S. 473, cited by defendants.
In the Stimal case the employer's factory was located quite a distance from the home of the employee, which was in Buffalo, N Y There was regular trolley service between the home of the employee and the factory but in order to supplement this trolley service the employer operated a bus and charged the identical fare which was charged by the trolley line. The court found that the record did not show that so far as the particular employee was concerned there was a necessity for the additional bus service.
The facts of the California Casualty Company case [21 Cal.2d 461, 132 P.2d 816] we think, are much more nearly like those here. In that case there was a regular bus fine which operated between the town in which the employee lived and the place of employment, and, for the convenience of employees living in the town in which the particular employee lived, the employer corporation purchased an automobile to transport those employees to and from work. They were not required to use the automobile because the bus line was in regular operation but those who did use it were charged $4 a month, which was deducted from their wages, and which was estimated as representing the pro rata share of each for the operation of the automobile. No regular driver was provided for the car, therefore "The employee who lived the farthest away would drive the car home, keep it over night and in the morning pick up the other employees on the way to work."
The court, considering the legal effect to be given to those facts, said: "Petitioner contends that even if the evidence shows an agreement to furnish transportation it was not part of the contract of hire and therefore not an incident of the employment. Transportation may be incidental to the employment, however, even though it is only a collateral or subsidiary part of the contract of employment, or 'something added to the principal part of that contract as a minor, but none the less a real, feature or detail of the contract.' In re Donavan, supra (217 Mass. 76, 104 N.E. [431] 432 [Ann.Cas.1915C, 778]). Since the transportation was regularly furnished to the employee solely because of her status as an employee, the inference is reasonable that the transportation depended upon the fact of the employment and was incidental to it. *Page 355 
See Dominguez v. Pendola, supra [46 Cal.App. 250,188 P. 1025]. The employer's charge for the transportation did not transform the agreement into an independent contract of carriage, since the consideration for the employer's agreement was not simply the payment of the $4 monthly but the performance of work for the company as well. American Coal Mining Co. v. Crenshaw, supra [77 Ind. App. 644, 133 N.E. 394]. * * *."
The above quoted reasons given by the Supreme Court of California appeal strongly to us, and we think that the same may be said as to the legal effect to be given to the facts which we find here. The transportation was incidental to the employment. It would not have been furnished but for the employment and the inconsequential charge made for the transportation did not transform the contract of employment which included, impliedly, an independent contract of carriage into two contracts, one of employment and one under which the company, an operator of the bus, became a carrier for hire.
Counsel for defendants say, and this we have already stated, that there is a well-established rule that employees going to and from work are not within the protection of the Act, and that the sole reason for the exception to the rule, holding that an employee being conveyed to and from work in an employer's conveyance comes within the protection of the Compensation Act, is that if it were not so held, since the employee driving the car and the employee riding would be fellow servants of each other, they would be denied all right of recovery in tort because of the fellow servant doctrine. Counsel, after stating that in Louisiana they would not be considered fellow servants of the driver of such a bus, argue that since here the fellow servant doctrine would not apply, they would be permitted to recover in tort and that we should not hold that their remedy is under the workmen's compensation statute. We think that that statement means nothing more than to say that if an employee rides in a true sense as a passenger for hire, then he is not an employee while so riding. But whether he is such a passenger for hire is the exact question which is before us. Was the employee here a passenger for hire or was he merely riding as an incident to his employment and paying a part or all of his pro rata share of the cost of transportation? We think that he was riding as an incident to his employment and not as a passenger for hire.
[5] The fact that his employer could have discontinued the operation of the bus at any time does not affect the situation. Had it done so, then plaintiff would either have discontinued the employment or would have made an effort to find some other way of getting to and from his work. So long as the employer did not discontinue the service and so long as the employee continued to ride as an incident to his employment, the legal relationship between the parties while the employee was so riding remained the same. It follows that plaintiff's claim is one under the Compensation Statutes, and therefore the right to recover is governed exclusively by those statutes — Act No. 20 of 1914, as amended.
What then is the effect to be given to the so-called compromise settlement by which plaintiff was paid $3000 and by which she released Higgins Industries Inc. "* * * from any consequences of the accident hereinafter described and any and all claims of every nature for wrongful death, loss of support, loss of companionship, pain and suffering and medical attention * * *".
Plaintiff maintains that not only was this settlement not presented to any court for approval but that it is in effect an attempt to discount a lump sum settlement at a greater rate of discount than 8% per annum, and that the defendants are, therefore, liable for the penalty provided in section 8 of sub-paragraph 9 of the statute, as amended, Act No. 242 of 1928, p. 362, § 8, subd. 9. An outline of the pleadings is necessary to a clear understanding of this situation because counsel for defendants maintain that they have in no way pleaded and do not now contend that the settlement which was effected was a settlement of any compensation claim, and that they merely maintain that by having accepted money as payment for a claim in tort, plaintiff has estopped herself to contend that she has a claim in compensation and that furthermore *Page 356 
she cannot attempt to set aside that compromise without tendering back the amount which she received when the compromise was made.
We now set forth an outline of the pleadings.
On March 24, 1944, plaintiff filed in the Civil District Court for the Parish of Orleans this suit under the Compensation Act. In it she made no reference whatever to the fact that she had been paid $3,000 in connection with any claim growing out of the death of her husband.
On April 10, 1944, defendants filed a motion in which they set forth that the plaintiff in this case was paid the sum of Three Thousand ($3,000.00) Dollars in full settlement of any and all rights which she might have had in the matter by reason of the death of her husband, on the ground that her husband at the time of his death did not come under Compensation Act No. 20 of 1914, as amended, for the reason that he was on his way home from work in a vehicle run by Higgins Industries, Inc. as an accommodation to him, and in which he did not have to ride, and as a matter of fact, he paid a fare to ride from work; that, therefore, his suit should be dismissed as a settlement has been entered into, and that she is estopped from now claiming under the Workmen's Compensation Act; that in the event she is not estopped and the said settlement is not a bar to this suit, then defendants traverse her right to bring suit in forma pauperis for the reason that she was paid the $3,000.00 and is not financially unable to pay the costs;".
On this motion defendants obtained an order calling upon plaintiff to show cause why the suit should not be dismissed and, in the alternative, why she should not be required to pay the costs of bringing the suit. Plaintiff then appeared and asked that the order authorizing the filing of the suit in forma pauperis be rescinded and she then paid the costs of filing the suit. Apparently, no ruling was had on the rule nisi under which defendants called upon plaintiff to show cause why the suit should not be dismissed because of the acceptance of the $3,000. Defendants then filed answer in which they alleged all of the facts set forth in that rule, towit, that $3,000 had been paid in full settlement,
Plaintiff then filed a motion in which she stated: " * * * that defendant's answer herein sets up inconsistent and contradictory defenses in that defendant denies the Workmen's Compensation Law applies to this case and then pleads payment and full settlement of the claim."
On the filing of this motion, plaintiff obtained an order calling upon defendants to show cause why they should not elect between the two defenses. On this motion to elect the judge of the District Court wrote: "Motion to elect denied." Thereupon, in a supplemental and amended petition, plaintiff, reiterating and reaffirming all of the allegations of her original petition, alleged: "That, in the event defendants seek to offset petitioner's demand by the sum of Three Thousand And No/100 ($3,000.00) Dollars alleged to have been paid petitioner or plead said settlement of Three Thousand And No/100 ($3,000.00) Dollars in bar of plaintiff's action, then, in that event, petitioner shows that said pretended settlement is an illegal settlement under the Workmen's Compensation Law and petitioner is entitled to have all of the compensation claimed in her original petition paid in a lump sum."
The matter then went to trial and judgment was rendered in favor of plaintiff and against defendants for $23.35 a week for 300 weeks, and also for $150 for burial and incidental expenses, all subject to a credit for $3,000 previously paid by the defendants. We repeat here that it is agreed that the amount allowed is correct provided defendants are liable in compensation and provided they are also liable for the 50 per cent penalty.
Until the decision of the Supreme Court in Puchner v. Employers' Liability Assur. Corporation, 198 La. 921,5 So.2d 288, it had been held that when there is a bona fide dispute as to whether the compensation statute applies or as to the duration of the period of disability, a compromise may be entered into between the parties. Musick v. Central Carbon Co.,166 La. 355, 117 So. 277; Young v. Glynn, 171 La. 371,131 So. 51. *Page 357 
But even where a compromise was permitted it was obvious that the approval of the proper court was necessary because section 17 of the Statute, as amended by Act No. 96 of 1942, which it was held permitted such a compromise, so required.
[6] When in the Puchner case it was held that no such compromise could be entered into where the duration of the disability was involved, there resulted the amendment of 1942 (Act 96 of 1942) under which the parties are permitted to compromise and settle a bona fide dispute "as to liability or coverage under the act" or concerning the "extent or duration of the injury or disability involved." But even under this amendment it is required that the compromise agreement be "approved by the Court having competent jurisdiction." Counsel for defendants recognize that no effective compromise of a compensation claim may be made without judicial approval but they say that defendants did not make and do not claim to have made such a compromise. They state that all that was settled was a claim ex delicto but that that settlement has the effect of estopping plaintiff to assert that her proper claim is one in compensation for the reason that she, having accepted settlement of a claim in tort, has enriched herself at the expense of defendants, and cannot now be heard to say that the claim is, in reality, one in compensation.
Ordinarily, we recognize, of course, the well established rule that an estoppel is created by such an act. But if that rule should be applied in a case like this, it would have the effect of completely emasculating the requirements of the statute concerning compromise, for it would result in the giving of complete effect to a compromise whereas the statute provides that it cannot be given effect unless it has been approved by the proper court, and unless it is for an amount which would not represent a greater rate of discount than 8% per annum on a lump sum settlement. In the Puchner case, supra, the Supreme Court said: [198 La. 921, 5 So.2d 294] "Matters relative to compensation claims being governed exclusively by the provisions of the workmen's compensation act, as amended, are sui juris; consequently, any settlements made in contravention of the statute or the policy thereof are unenforceable and may be set aside. * * *."
And in the opinion on rehearing appears the following: " * * * As stated in our original opinion, matters relative to compensation claims are governed exclusively by the Workmen's Compensation Act and any settlement made in contravention of its provisions and its policies are unenforceable and may be set aside. Such being the case the Articles of the Civil Code are not applicable. For the same reason the contention that the compromise or settlement cannot be set aside because of an error of fact is unavailing. * * *."
[7] We next consider the contention of defendants that plaintiff cannot be permitted to maintain this suit because, before bringing it, she failed to tender the return of the amount received in compromise. The position of defendants on this contention is inconsistent with their assertion that the compromise therein was a settlement of the compensation claim. In the one breath they say: "We settled this claim by compromise and plaintiff cannot be heard to attempt to set aside that compromise and bring suit on the claim without first tendering back the amount she received in compromise" and in the next breath, when they are charged with having made an illegal settlement of a compensation claim, they say: "We made no settlement of a compensation claim, we settled only a claim ex delicto."
Plaintiff also makes two equally inconsistent contentions. She asserts that she need not tender back the money because it was received in settlement of a tort claim, whereas this suit is on a compensation claim. And yet when the penalty contention arises, she asserts that since the money was received in an attempt to make an illegal settlement of a compensation claim, she is entitled to the penalty because the Act provides that such penalty must be paid where an illegal settlement is attempted.
We think that the answer to the argument that plaintiff should not have been permitted to maintain this action, which is in the nature of a suit to set aside a *Page 358 
compromise, without first tendering back the amount received in compromise lies in the fact that to enforce that well-recognized rule in a compensation case would almost always bring about the exact result which the act is designed to prevent. In most instances it would permit the employer or the insurers to effect, without judicial approval, a settlement which, though not legally binding, would be completely effective because in practically all instances the plaintiff would find it impossible to find the money with which to make the return of the amount paid in compromise. In most cases the amount received in such a compromise is at least partially dissipated in accumulated expenses, burial, hospital or medical bills, and cannot be replaced by the injured workman or by his dependents if he has been killed. We repeat a part of an already quoted paragraph from the Puchner decision "* * * compensation claims are governed exclusively by the Workmen's Compensation Act." We think that the so-called settlement did not prevent plaintiff from maintaining this suit in compensation.
But plaintiff contends that the attempted settlement was in violation of the terms of the Compensation Statute in that it was an effort to discount a lump sum settlement at a rate greater than 8% per annum, which, as we have said, is prohibited by section 8 of sub-paragraph 9. To this contention defendants repeat the statement that they made no settlement of a compensation case at all but only a claim ex delicto.
But by the words of the written document the settlement was not limited to either a claim in tort or to a claim in compensation. It grants a release from "any and all claims of every nature for wrongful death, loss of support, loss of companionship, pain and suffering and medical attention * * *."
If defendants made no settlement of the compensation claim then the amount paid was not paid as compensation and whatever right they may have to claim it back as having been paid as a result of an error of law could not be asserted here because the Compensation Statute does not permit that any claim be asserted against any amount due in compensation. Sec. 21, as amended by Acts 243 of 1916, 247 of 1920 and 85 of 1926.
However we find that counsel for plaintiff concedes that since plaintiff claims that the amount paid was, in fact, a payment on a compensation claim, it was properly allowed as a credit against the amount found by the District Court to be due.
[8] In considering whether there was a violation of the statute and whether such violation made defendants liable for the 50 per cent penalty which is provided by the statute, we first look at what was said by the Supreme Court in Puchner v. Employers' Liability Assur. Corporation, supra, and in Fluitt v. New Orleans, Texas Mexico Ry. Co. et al., 187 La. 87,174 So. 163, 173. As we read these decisions we think that the Supreme Court found a distinction between the meaning of the word "settlement" and the meaning of the word "compromise" and said that the word "settlement" means an amicable agreement on the amount to be paid in compensation where there is no dispute or disagreement between the parties, and that the word "compromise" means the arrival at an agreement upon some middle ground where there is a dispute or disagreement.
The release which was taken in Fluitt v. New Orleans, Texas Mexico Railway Co., supra, was very similar in its essential details to the one which plaintiff here executed.
It contained the following: "Said sum of money is accepted by the undersigned in compromise and settlement of all damages, injuries and disabilities * * *."
In spite of the fact that the release stated that it was given in "compromise and settlement" the Supreme Court said: * * * it appears that there was no dispute as to liability, amount of wages earned or compensation due * * *."
It is true that the effect of the Puchner decision caused the enactment of the amendment which appeared in Act 96 of 1942, and that as a result of that statute a compromise may be entered into where there exists "a bona fide dispute [on either *Page 359 
the question of] * * * liability or coverage under the act, [or on the] * * * extent or duration of the injury or disability."
Even before the amendment and even under the ruling in the Puchner case, there could have been a compromise between the parties where there was a bona fide dispute as to whether there was coverage under the Act. Courmier v. Superior Oil Co., D.C.,60 F. Supp. 542. In the Puchner case there was no dispute as to coverage, and the court held that therefore the only question in dispute was the extent or duration of the disability, and that there might be no compromise on a question of that kind. Here it is true that the only question which was in dispute when this suit was filed was whether there was coverage under the Act. Had that been a disputed question at the time of the payment, a compromise could have been entered into had the requirements of the amendment of 1942 been complied with.
[9] But we find nothing to show that there was any "dispute" or "disagreement" between the parties here when the payment was made. Mrs. Smith was not represented by counsel. No one raised for her the question of whether she was entitled to be paid under the compensation statute. She was merely told that if she was entitled to any amount, it was on a claim in tort, and that there having been some doubt as to whether she was entitled to anything at all, the defendants or its insurers were willing to pay her $3,000 for a full discharge from all liability. Since we hold that the claim is in reality one in compensation, and since there can be no question about the proper period during which payments must be made under the act, there may be no settlement except by first commuting the payments into a lump sum and by then discounting the lump sum payments at a rate not in excess of 8% per annum.
[10] It is obvious that 300 weeks at $15.57, discounted at a rate not in excess of 8% per annum, would produce a sum in excess of $3,000, and it necessarily follows that if that payment be looked upon as a settlement or discounting of 300 weekly payments, it is in violation of the section of the act to which we have referred.
That the penalty provided by the statute is mandatory wherever there has been a "settlement" at a rate of discount greater than eight per cent per annum has many times been held. Fluitt v. New Orleans, Texas Mexico Ry. Co., supra; Puchner v. Employers' Liability Assurance Corporation, supra. It is true that in the Puchner case the court did not enforce the penalty but the reasons given for not enforcing it are not applicable here. There the court found that in making the settlement the parties had been misled by expressions contained in certain decisions of the Supreme Court and in certain decisions of the Courts of Appeal which had followed the referred to decisions of the Supreme Court. Since it is conceded that the amount paid in settlement should be credited against the amount due, it is obvious that no change should be made in the judgment of the District Court.
It is therefore ordered, adjudged and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellants.
Affirmed.