JANVIER, Judge.
In the late afternoon of December 11, 1956, Gregory Vincent, the 18 year old son of Mr. and Mrs. Bowdie Vincent, was killed in an automboile accident which occurred near Lockport, in the Parish of La-fourche. His parents brought this suit against his employer, Service Contracting, Inc., and its insurer, The Travelers Insurance Company, praying for judgment under the Louisiana Workmen’s Compensation Law, LSA-R.S. 23:1021 et seq.
Though young Vincent was driving his own car at the time and was on his way home from the scene of .his employment, his parents allege that they are dependent parents, and, as such, are entitled to recover in compensation for the reason, so they allege, that it was the policy and practice of the employer to provide transportation for its employees to and from the scene of employment and to pay hourly wages for the time required in making the trip to and from the place of employment, ;and that, therefore, since it was the policy *282 of the employer to provide transportation and since it was also the policy of the employer to pay for the time consumed during that transportation, though their son was in his own car, he could have been in a truck which the employer provided and was being paid for the period during which the accident occurred, and that, accordingly, the accident should be considered as having taken place during the course of employment and as having arisen out of it.
The defendants, admitting the employment, assert that the work of young Vincent on that day had terminated, that he had left his place of employment in his own car, that it was not the policy of the employer to provide transportation for its employees nor to pay wages based on the time consumed by the transportation, and that, accordingly, the accident did not occur in the course of employment and did not arise out of it.
In the Twenty-fourth Judicial District Court for the Parish of Jefferson, there was judgment dismissing the suit and plaintiffs have appealed.
Service Contracting, Inc., is engaged in the business of doing certain specialized jobs particularly for producing oil companies. Its various jobs are located over the very large territory in Louisiana in which oil is found. It employs between four and.five hundred men who are divided into gangs, the size of each of which depends upon the job to be performed. In charge of each of these gangs is a “pusher” who is responsible for employing a sufficient number of employees in his gang. It was customary for the various members of each gang to meet at some place near their various residences and then to proceed to the place at which the work of that day was to be performed by that gang.
Each pusher is provided with a “pick-up truck,” since it is often necessary for him to transport tools or other equipment. A pick-up truck has a seat only in the cab. This' can accommodate the driver and possibly one or two others. There is back of the cab a small open body in which tools and equipment may be carried.
When the various members of the gang have gathered at the point agreed upon, they start to the scene of their work. Almost all of them use their own cars. It does appear that at that time, though the company officials did not know it, some of the employees were sometimes permitted by their respective pushers to ride in the pickup truck. No employee made a regular practice of riding in the pick-up truck, but on some occasions, when it was inconvenient for an employee to provide his own transportation, the pusher permitted him to ride in the truck. It seems certain that young Vincent never rode in the pick-up truck.
On the day in question he appeared in a car owned by him and he, with other employees, proceeded in his car from the gathering point to the scene of the work, and on the return trip he and others were returning in his car when the accident occurred. One of the men who was with him also owned a car and it is shown that these two young men, Vincent and this other employee, had formed what is referred to as a “car-pool”, alternating in the use of their respective cars.
In most instances the jobs which Service Contracting, Inc., performed were at spots not on land and which must be reached by boat transportation. The particular job at which this gang was engaged at that time was located at a point which had to be reached by boat, the transportation from the boat landing to the scene of the work requiring only a very few minutes. It is conceded that this transportation by boat was provided by the employer.
When the various members of each gang boarded the vessel provided by the employer, their “boat time” commenced. The “boat time” was figured on a lower pay scale than the regular pay for work time at the job itself so that when a boat trip consumed any appreciable time, the men *283 were paid boat time from the boat landing to the work and then regular time during the course of the work and then boat time at the close of work from the work back to the boat landing.
The record shows that on this particular job the boat trip consumed such a short time that the company commenced paying regular work time wages from the time the men left the boat landing until they returned to it in the evening.
Plaintiffs maintain that, in addition to the boat pay and in addition to the regular work pay, the company had established a policy of paying the employees in addition to the regular work time and the boat time, extra time to cover the period consumed in going from the gathering place to the boat landing, and in returning in the evening. And plaintiffs also contend, as already stated, that it was the policy of the company to furnish the land transportation which was available to employees who might see fit to use it.
The District Judge reached the conclusion that the company did not furnish land transportation and did not pay for the period consumed by the land transportation. In his reasons for judgment he said:
“There is very little dispute as to the facts, that is that the said Gregory K. Vincent was employed in a hazardous occupation for Service Contracting, Inc., and was so employed at the time of his death. It is also uncon-tradicted that he was returning home from his employment in a car operated by him and owned by his father. The only point in dispute is whether or not at the time of the death of the decedent he was in the scope of his employment. Plaintiffs produced several co-workers of the decedent herein who testified that in certain cases the said Service Contracting, Inc., did furnish transportation to its employees and more particularly on the date of the death of the decedent herein that such a policy was in existence.
“The defendants in rebutting this claim proved conclusively that the only means of transportation furnished by Service Contracting, Inc., was from the shore to the site of the oil well and that no land transportation had been furnished by the said Service Contracting, Inc.,
“Plaintiffs rely upon the principle of law enunciated in the case of Gibbs, v. Pizzolato, [La.App.] 67 So.2d 139, and in Griffin v. Catherine Sugar Co., Inc., [219 La. 846] 54 So.2d 121, and Neyland v. Maryland Casualty Co., [La.App.] 28 So.2d 351, but a close perusal of all of these authorities was to the effect that it was a definite policy of the employer to furnish transportation to its employees but in no part of the testimony adduced by the plaintiffs or defendants herein has it been shown that it was the policy of the Service Contracting, Inc., to furnish such transportation to its employees, and to the contrary it is proved to the satisfaction of the Court that such a policy never existed. While it is true that some of the testimony of the plaintiffs herein, more particularly that of the foreman for Service Contracting, Inc., testified that they did include in their time schedule certain hours of work not performed by employees but in an amount such as would compensate them for travel time from their home to the job site, the Court cannot assume that because of the acts of the employees without the knowledge, consent or approval of the employer that it allowed travel time for employees, more specifically when they have not been informed that such was the policy of the company. In order for the plaintiffs to maintain this act, it must conclusively prove that Service Contracting, Inc., did as a matter of policy furnish such transportation *284 and the Court is of the opinion that this is not the case and, therefore that the plea and claim of the plaintiffs herein must fall, and accordingly, * * *."
We find ourselves in full accord with these findings of fact.
While there is no doubt that on some occasions some of the employees were permitted to ride from the gathering point to the boat landing and to return in' the company’s truck, this was done, not as a part of the contract of employment, but was permitted only as a convenience to those employees who could not provide their own transportation or who; for reasons of their own, found it more convenient every now and then to ride in the truck.
It is made very certain that each employee was under the necessity of providing his own transportation and that the officials of the company had no knowledge of the fact that, on certain occasions, employees were permitted to ride in the truck. At any rate young Vincent did not ride in the company truck, and, as already stated, was killed while driving his own car and at a point several miles from the scene of the boat landing and on a regular public highway of the State of Louisiana.
Mr. Wex S. Malone, in his work on “Louisiana Workmen’s Compensation” section 171, p. 199, states:
“The Courts have consistently stated that an accident that befalls an employee while he is going to or returning from work does not occur in the course of his employment.”
Counsel for plaintiffs concede that this is the general rule, but rely upon an exception which is applicable where the transportation to and from the work is provided by the employer, and they say that the exception here is applicable even though the employee, Vincent, was riding in his own car, for the reason that he could have been in the company truck had he wished to. In each of the cited cases on behalf of plaintiffs as authorizing the exception to the rule, the employee was actually riding in a vehicle provided by the employer. Gibbs v. Pizzolato, La.App., 67 So.2d 139; Griffin v. Catherine Sugar Co., Inc., 219 La. 846, 54 So.2d 121; Neyland v. Maryland Casualty Co., La.App., 28 So.2d 351; Walker v. Lykes Brothers-Ripley S. S. Co., La.App., 166 So. 624.
There is, of course, another exception to the general rule, this exception being to the effect that there may be liability in compensation where the employee, in going to or from his work, must necessarily come into contact with an unusual danger to which the general public is not exposed, or must cross some unusual danger zone in order to get to or from his place of employment. This exception is recognized in Walker v. Lykes Brothers-Ripley S. S. Co., supra.
Surely there is nothing about the location at which this accident occurred which would make this particular exception applicable.
Thus, unless it has been made to appear that Vincent was actually being paid as an employee for the period during which the accident occurred, we cannot see any reason for not applying the general rule.
There is evidence to the effect that it was the custom for the pushers, where the time consumed in going to and from work was great, in making out the report forms on which each showed the hours of work of each employee, to add to the regular work time two hours to cover the time consumed in travel. In other words, if an employee actually worked ten hours, it . was customary, so plaintiffs contend, for the pusher to- fill out the form so as to show twelve hours.- On this point plaintiffs rely heavily on the testimony of a former employee of Service Contracting, Inc., one Maurice Bladsacker. He had, for a time, been employed as a pusher and he said that not only did he follow the *285 custom of adding two hours time as working time, but that this practice was customarily followed by other pushers. This employee was obviously disgruntled and for some unexplained reason harbored animosity towards his former employer. He was not the pusher of the gang in which young Vincent worked and admitted that he had no knowledge as to whether any travel time had been added on the day on which Vincent was killed.
As contradicting the testimony of Blad-sacker, defendants point to the testimony of John Martin, who was the pusher under whom Vincent worked on that day. Martin says that there was no such custom and that no additional time was ever added to cover the period consumed by land travel and that he made no such allowance on that day.
There is other evidence to the effect that this practice was customary and there is considerable evidence to the contrary. It is made very certain that if there was any such custom, the company officials knew nothing about it and did not sanction it.
It is shown that the California Company for whom Service Contracting, Inc., was doing that particular job, knew nothing about any such practice, and it seems very evident that if there had been any such practice, 'California Company would have known of it, for the record shows that employees of the California Company carefully checked time records of Service Contracting, Inc:, to make certain that the time charged by that Company to the California Company was correct.
The record is filled with various forms containing columns for the entry by the pushers of the number of hours each employee worked. One column shows “contract time” and another shows “additional time.” Wherever there was additional time shown on any of these forms, it is shown as “boat” time and in not one of them is there shown any additional time for travel. If there had been established the custom of allowing additional time for land travel, no reason is shown for not entering that time in the column “additional time.”
We see no necessity for discussing at length and in detail the testimony of each of the numerous witnesses. Suffice it to say that, in our opinion, the testimony of the defendants is most convincing. Surely it cannot be said that, on this question of fact, the District Judge was manifestly in error. He found that there was no such custom and in this we agree with him. Furthermore, as already stated, it is especially obvious that if there was any such policy, the officials of the company did not authorize it and knew nothing about it.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.