320 So.2d 254 (1975)
Howard Joseph LANDRY et ux., Plaintiffs and Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants and Appellees.
No. 5176.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1975.
*255 L. Hallman Woods, New Iberia, for plaintiffs-appellants.
Roy & Forrest by L. Albert Forrest, New Iberia, Allen, Gooch & Bourgeois by Michael Harson, Lafayette, J. B. Willis, St. Martinville, for defendants-appellees.
Before DOMENGEAUX, WATSON, and BEER, JJ.
DOMENGEAUX, Judge.
This is a suit for personal injuries, property damages, and workmen's compensation benefits. On January 22, 1970, plaintiff, Earline Floyd Landry, and one of the defendants, May Fusilier Charles, were co-employees of Pullen Molded Products, Inc., and had just completed their work for the day. While on their employer's parking lot operating their respective automobiles, in preparation to depart for their homes, the defendant, May Fusilier Charles, struck Mrs. Landry's vehicle from the rear. As a result of this accident Mrs. Landry and her husband filed suit against May Fusilier Charles, (an uninsured motorist), and State Farm Mutual Automobile Insurance Company, the Landry's liability carrier, under *256 the uninsured motorist provision of the policy. The suit was for alleged injuries incurred by Mrs. Landry, and for property damage to the Landry vehicle. By supplemental petition the plaintiffs claimed compensation benefits for Mrs. Landry from Travelers Insurance Company, the workmen's compensation carrier of Mrs. Landry's employer, Pullen Molded Products, Inc. All defendants answered the suit with State Farm and Travelers making third party demands against May Fusilier Charles for indemnity and contribution as the uninsured motorist and alleged tort feasor. Additionally, State Farm claimed a credit for any workmen's compensation benefits awarded Mrs. Landry by Travelers.
The suit emanating from the January 22, 1970, accident was consolidated for trial with another suit by the plaintiffs resulting from an accident of November 29, 1968, involving a collision between Mrs. Landry, who was driving her automobile, and a municipal garbage truck which was being operated by an employee of the City of New Iberia.
At the conclusion of the consolidated trials the District Judge dismissed plaintiffs' suit in connection with the November 29, 1968 accident on the basis that plaintiffs had failed by a preponderance of the evidence to prove negligence on the part of the driver of the municipal garbage truck. Concerning the suit resulting from the accident of January 22, 1970, the trial judge ruled that the accident was caused by the exclusive negligence of defendant, May Fusilier Charles, held her responsible to the plaintiffs for damages, and awarded them uninsured motorist benefits against State Farm, subject to a credit for the medical expenses which were cast against Travelers as workmen's compensation benefits. The District Judge held that Mrs. Landry was entitled to no weekly compensation for disability and further that State Farm and Travelers were each entitled to judgment against May Fusilier Charles for indemnity, for the sums for which they were cast.
The decision of the trial court in the first suit (November 29, 1968) is not appealed. The plaintiffs have appealed the judgment of the District Court insofar as it concerns the second accident (January 22, 1970), and none of the other parties have answered the appeal nor appealed themselves.
The issues are:
(1) At the time of the 1970 accident, had Mrs. Landry completely recovered from injuries alleged to have been sustained in the 1968 accident?
(2) Were all complaints by Mrs. Landry following the 1970 accident proven to be a result of the 1970 accident only?
(3) Did Mrs. Landry suffer only "a mild whiplash" as a result of the 1970 accident?
(4) Was the tort award of $500.00 for pain and suffering awarded Mrs. Landry as a result of the 1970 accident inadequate?
(5) Did the trial court err in allowing the defendant State Farm a credit for workmen's compensation medical expenses paid by Travelers Insurance Company?
We find that the reasons for judgment authored by the District Judge are comprehensive, and fully explanatory, and support the evidence concerning the first four issues herein and we quote with approval his reasons in those connections as follows:
". . . The plaintiff, Mrs. Earline Landry, had been involved in two automobile accidents, one of which occurred on November 29, 1968, and the other accident occurred on January 22, 1970. Subsequently, suit was filed on both accidents and at the conclusion of the trial on the merits the Court found in favor *257 of the defendants in the November 29. 1968 accident, and in the reasons handed down [sicherein] by the Court found for the plaintiff in the second accident. The sole issues to be decided here are the amount of damages sustained by Mrs. Landry, and further, are these damages (injuries) compensable under workmen's compensation.
The second automobile accident occurred on January 22, 1970, when the vehicle being operated by plaintiff, Mrs. Earline Landry, was struck from the rear by a vehicle being driven by defendant, May Fusilier Charles, an uninsured motorist. State Farm Mutual Automobile Insurance Company is made a defendant in this action by reason of the uninsured motorist provision in its policy issued to the plaintiffs.
At the time of the January 1970 accident, Mrs. Earline Landry was employed at Pullen Molded Products, Inc., now Keyes Fiber Company. The Travelers Insurance Company is made a defendant herein as the workmen's compensation insurer of Pullen Molded Products, Inc. The workmen's compensation claim is alternative to the suit against the alleged tort feasor and the uninsured motorist insurer, and further, is made only in the event that the Court should find that Mrs. Earline Landry was within the course and scope of her employment at the time of the January 1970 accident.
This Court shall first determine the issue of damages wherein plaintiffs have taken the position that the accident of January 22, 1970, caused Mrs. Landry to suffer a whiplash-type injury, and they argue that she presently suffers from a thoracic outlet syndrome,[1] allegedly resulting from the 1970 accident.
Dr. J. L. Comeaux, a general practitioner who began treating Mrs. Landry on January 23, 1970, diagnosed her 1970 injury as a mild whiplash. Dr. Comeaux, the treating physician, prescribed some muscle relaxants and analgesics for Mrs. Landry. (Comeaux Dep. p. 22). He did not think it necessary that Mrs. Landry wear a cervical collar, and found that all objective signs of injury had disappeared sometime in March 1970. (Comeaux Dep. pp. 6 and 21).
After March of 1970, Mrs. Landry consulted Dr. Rivet in Lafayette, and Dr. McCutchen of Houston, Texas, for a further diagnosis.[2]
Dr. John J. McCutchen diagnosed Mrs. Landry's condition as thoracic outlet syndrome. In arriving at this, he relied upon the positive results of two different performances of the Adson Maneuver[3] and upon the complaints related by Mrs. Landry. (McCutchen Dep. pp. 9-10, 14). Dr. McCutchen's diagnosis of thoracic outlet syndrome significantly relied upon Mrs. Landry's subjective complaints.
Dr. James Gilly,[4] who examined Mrs. Landry after the first accident, prior to the second accident, stated that if a person had a vascular problem (thoracic outlet syndrome), he would expect the results of the Adson test to be one hundred percent positive on each testing day. (Gilly Dep. p. 18). He performed the Adson Maneuver when he examined *258 Mrs. Landry on December 17, 1968, September 3, 1969, and November 10, 1969. All of these Adson tests were negative, and Dr. Gilly felt that, based on these results and his examinations of Mrs. Landry, she had no indication of a thoracic outlet problem. (Gilly Dep. 9).
It was seen in the testimony of Dr. Gilly that during his treatment of Mrs. Landry in 1968 and 1969, she had complaints of spasm of the right upper extremity, cramps in her arms, numbness in her hands, and pain running from her neck toward both shoulders. (Gilly Dep. 5, 8 and 11). Dr. Edwin Landry, a general practitioner who first saw Mrs. Landry following the first accident, testified that, in January, February, and March, 1969, she complained of radiating pain in the arms. (Landry 9-10).
Therefore, it is clear that Mrs. Landry's complaints which are allegedly referable to the thoracic outlet existed well in advance of the January 1970 accident.
In direct opposition to the expert testimony of Dr. McCutchen was the testimony of Dr. Rivet, a Lafayette neurosurgeon within whose specialty the syndrome falls. Dr. Rivet found negative results on each of the occasions he performed the Adson Maneuver on plaintiff. Both these occasions were after the second accident and Dr. Rivet positively testified that in his opinion, plaintiff did not have the syndrome following the second accident. (Rivet Dep. p. 12 and App. Note 20 and 21). Additionally, he was of the opinion that the syndrome would not even be produced by an automobile accident. (Rivet Dep. p. 18, App. Note 22).
Clearly, the experts' testimony is in conflict on the question of the Adson test. It is important to note here that, according to Dr. Gilly, in order to base a diagnosis of the syndrome on a positive Adson test, it should show positive with 100% consistency on every testing day. (Gilly Dep. p. 18). It was not, as shown above.
Dr. McCutchen is a neurologist who performs no surgery and is not even Board-certified. He admittedly based his diagnosis primarily on plaintiff's subjective complaints, (McCutchen Dep. 14-15), and secondarily, on a subjectively based test referred to as the Adson Maneuver. (App. Note 12 and 14).
Medical evidence must therefore be said to preponderate against finding that plaintiff suffered from a thoracic outlet syndrome. This Court finds that plaintiffs have not carried their burden of proving that a thoracic outlet syndrome developed as a result of the second accident.
Defendant, May Charles, testified that when her car collided with Mrs. Landry's vehicle, the two women had completed their work shift at Pullen Molded Products, Inc., and Mrs. Landry was waiting to turn onto Admiral Doyle Drive at which time the Charles vehicle jumped forward, thereby coming into contact with the rear of the Landry automobile. (Tr. 33-34, 167-168). The resulting property damage amounted to only about $50.00 to the Charles vehicle and slightly more than $100.00 to the Landry automobile. (Tr. 168; Plaintiff's Exhibit 4). Mrs. Landry's testimony was that there were cars in front of her, but the impact caused her car to move forward only about one or two feet, thus she did not hit the car ahead of her. (TR. 127-128). Additionally, she testified that she was wearing a cervical collar at the time of the collision, knew that there would be a collision, and had prepared and braced herself for the impact. (TR. 128; 163).
Mrs. Landry's own testimony is important here. She testified to the following at page 163 of the transcript:
`Q. Now, Mrs. Landry, isn't it a matter of fact that at the time of the *259 second accident you were still having pain in the neck and arms which you, yourself, said were caused by the first accident?'
`A. Right.'
Also, she stated the following on that same page:
`Q. My question was this: Did you at one time maintain that after the accident in January of 1970 that you were suffering no pain which you were not already suffering as a result of the first accident?'
`A. Right.'
Regarding disability, the Court recalls that John Anderson, an employee of Pullen Molded Products, Inc., testified that Mrs. Landry was able to do all of her work, and that she worked as much and as fast as any of the other employees. (TR. 55 and 69). Furthermore, Shirley Louviere, Mrs. Landry's production foreman, testified that she did everything expected of her, and that she was never given any special consideration. (TR. 78 and 87).
The Court further notes that Travelers' Exhibit Number One reflects that Mrs. Landry worked steadily for eight weeks and a part of the ninth week subsequent to the 1970 accident.[5]
It is therefore the opinion of this Court that, Mrs. Landry, as diagnosed by her treating physician, sustained only a minor whiplash as a result of the second accident. This Court also finds Mrs. Landry did have preexisting neck problems and that this condition was temporarily aggravated, again as a result of the second accident.
This conclusion is easily reached upon considering Mrs. Landry's statements whereby she herself acknowledged that she felt no pain after the second accident, which she wasn't already suffering. Further, Dr. Comeaux, the treating physician, testified that all objective signs of Mrs. Landry's injury had disappeared in March of 1970, some month and one-half after the accident.
It has been heretofore determined that May Fusilier Charles was negligent in the operation of her automobile and that this negligence was the proximate cause of the accident which resulted in damage to Mrs. Landry. . . . . ."
The trial judge also concluded that Mrs. Landry was in the course and scope of her employment at the time of the accident of January 22, 1970, citing Baker v. Texas Pipe Line Company, 5 La.App. 25 (2nd Cir. 1926); Thibodaux v. Yount Lee Oil Company, 13 La.App. 591, 128 So. 709 (1st Cir. 1930); Bates v. Gulf States Utilities Company, 249 La. 1087, 193 So.2d 255 (1966). The general rule of those cases is set out in Malone, Workmen's Compensation Law and Practices, Sec. 169 (1951 Edition) as follows:
". . . Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it includes reasonable periods for rest, relaxation or the attendance of personal needs . . ."
No issue is made of the District Court's conclusion that Mrs. Landry, at the time of her accident, was covered by the Workmen's Compensation Act, nor that there was error in not awarding her weekly compensation benefits. Actually the record reflects that Mrs. Landry performed her work satisfactorily and without difficulty at Pullen from the time of the January 22, 1970 accident until the time that she discontinued her employment.
*260 We opine that the reasoning of the District Court adequately disposes of the first three issues. On the fourth issue we conclude that the District Judge did not abuse his discretion in awarding Mrs. Landry the sum of $500.00 in tort damages as a result of the 1970 accident. Bitoun v. Landry, 302 So.2d 278 (La.1974).
Concerning issue number five, the District Court granted judgment in favor of plaintiffs and against the uninsured motorist carrier, State Farm, in the full sum of $1,507.98, subject, however to a credit of $1,007.98, which was the amount that Travelers paid plaintiffs in medical expenses under workmen's compensation. This credit was presumably granted by virtue of an exclusionary clause contained in State Farm's policy concerning uninsured motorist protection which provided that any amount payable thereunder shall be reduced by . . . "(2) the amount paid and the present value payable on account of such bodily injury under any workmen's compensation law, disability benefits law, or any similar law . . ."
We believe that the District Judge erred in allowing such credit, as being contrary to the provisions of LSA R.S. 22:1406(D)(1). That statute, as it read on the date of the 1970 accident, required that, absent rejection by an insured, each automobile liability insurance policy include uninsured motorist coverage in not less than $5,000/$10,000 limits.
An insurance company may, in the absence of statutory provisions to the contrary, limit its liability and impose conditions on its obligations, not inconsistent with public policy. But where the limitation written into the policy is directly contrary to the affirmative legislative declaration establishing minimum limits of coverage in uninsured motorist policies, such limitation can not be given effect.
In Williams v. Buckelew, 246 So.2d 58 (La.App. 2nd Cir. 1970), a case which involved a similar issue, it was held that the provisions of the uninsured motorist policy providing for credit for workmen's compensation benefits paid were invalid in that the effect of such provisions would be to reduce the policy limits below the minimum required by R.S. 22:1406(D)(1). Although in that case the total ad damnum was greater than the $5,000 policy limit, nevertheless we feel that the rationale therein is applicable to the present case. The legislative prescription of minimum coverage obviously contemplates an effective coverage for losses up to the specified amount.
There are many cases of recent vintage in our jurisprudence which have interpreted the uninsured motorist provisions in policies under R.S. 22:1406(D), in which instances exclusionary clauses concerning uninsured motorist coverages have been invalidated as being contrary to the statutory mandates. Generally these cases hold that each such policy must effectively provide not less than the minimum coverage required by the Uninsured Motorist Statute, and any effort to reduce or deny this mandatory coverage will not be given effect. For example, see Graham v. American Casualty Company of Reading, Pennsylvania, 261 La. 185, 259 So.2d 22 (1972); Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972); Hebert v. Green, 311 So.2d 223 (La.1975); Crenwelge v. State Farm Mutual Automobile Ins. Co., 277 So.2d 155 (La.App. 3rd Cir. 1973); Roberie v. State Farm Mutual Automobile Insurance Company, 291 So.2d 923 (La.App. 3rd Cir. 1974); Wilkinson v. Fireman's Fund Insurance Co., 298 So.2d 915 (La.App. 3rd Cir. 1974).
For the above and foregoing reasons the judgment of the District Court is amended so as to delete therefrom the credit in the amount of $1,007.98 in favor of State Farm Mutual Automobile Insurance Company, as representing the medical expenses paid to plaintiffs by Travelers Insurance Company under workmen's compensation.
*261 In all other respects the judgment of the District Court is affirmed.
Costs of this appeal to be pro-rated equally between plaintiffs-appellants and defendant-appellee, State Farm Mutual Automobile Insurance Company.
Affirmed in part, amended in part, and rendered.
NOTES
[1] Described as a condition where there is a compression of the neurovascular components emerging out of the cervical area of the spine, resulting in some motor sensory loss or disfunction in that area.
[2] Dr. McCutchen is a neurologist and Dr. Rivet is a neurosurgeon.
[3] The Adson Maneuver is a test to determine whether a person may have a thoracic outlet syndrome. The examiner causes the patient's shoulder to be elevated and externally rotated and places his hand on the radial pulse of the patient, who is asked to turn the head to one side and backward, take a deep breath and hold it. If the test is positive, the radial pulse is blotted out at the wrist. If it is negative, the pulse is still discernable.
[4] Dr. Gilly, now deceased, was an orthopedic surgeon.
[5] There is no evidence as to why Mrs. Landry left her employment at that time, or why she failed to return.