[Civ. No. 20323. First Dist., Div. One. Nov. 20, 1962.]

CLIFFORD JARRETT, Plaintiff and Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant and Respondent.

Bernard Allard and Thomas Schneider for Plaintiff and Appellant.

Hagar, Crosby & Rosson and Justin M. Roach, Jr., for Defendant and Respondent.

MOLINARI, J.—This is an appeal from a declaratory judgment by the trial court interpreting an "uninsured automobile" section of an automobile liability insurance policy issued by respondent, Allstate Insurance Company, to appellant, Clifford Jarrett. The sole question is whether the trial court properly interpreted the contested provision.

### The Facts

This appeal is taken upon the same agreed statement of facts which was before the trial court. These facts are essentially as follows:

On April 3, 1959, Jarrett was insured by Allstate under an automobile liability insurance policy with limits of $10,000 for all damages sustained by one person under the "uninsured automobiles" provision contained in "Coverage S" of said policy. On said day Jarrett was employed as a truck driver by the Modesto Irrigation District and, in the course and scope of his employment was struck by an automobile owned and operated by one Robinson. Neither Robinson nor his car was covered by insurance. As a result of said accident Jarrett sustained personal injuries and damages. He became entitled to and did receive workmen's compensation benefits for the injuries sustained in the accident.

Section II of the policy in question entitled "Protection Against Bodily Injury By Uninsured Automobiles," contains within its provisions the following subtitles and clauses, which for purposes of reference we shall hereinafter refer to as Clause A, Clause B and Clause C, respectively:

"Coverage S—Bodily Injury Benefit Insurance

"Allstate will pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such automobile." (Clause A)

"*Limits of Allstate's liability*

"The limits of Allstate's liability stated on the Supplement Page under Coverage S as applicable to: 1. 'each person' is the limit of Allstate's liability for all damages arising out of bodily injury sustained by one person in any one accident; . . ." (Clause B)

"Any loss payable to any person under the terms of this Section II shall be reduced by the amount paid and the present value of all amounts payable to him under any workmen's compensation law." (Clause C)

Jarrett brought this action for declaratory relief to determine the meaning of these clauses. The trial court made its findings of fact and conclusions of law, and adjudged and decreed that Allstate is entitled to offset any sums determined to be payable under said policy by Allstate to Jarrett by the

amount of all workmen's compensation benefits paid to Jarrett and the value of all amounts payable to Jarrett in the future for workmen's compensation benefits at the time said payment is made under said coverage by Allstate.

## The Question Presented

Are workmen's compensation benefits payable to the insured deducted from the total amount of the damages sustained by him irrespective of the amount thereof, or only from the amount thereof which is within the policy limit of $10,000?

The latter alternative is the one adopted by the trial court as the basis for its judgment.

The issue before the trial court and before us involves the situation where the total amount of the damages exceeds $10,000 and both parties have so treated it. This results from the fact that because the total amount of the insured's claim against the insurer under the uninsured motorist coverage cannot exceed $10,000, the same result would obtain under either interpretation where the total amount of the damages sustained is $10,000 or less.

## Contentions of the Parties

Jarrett contends that the amount payable to him under the insurance policy should be determined by deducting his workmen's compensation benefits from the total amount of his damages, not from the $10,000 policy limit. Thus he asserts, by way of illustration, that if he suffered damage in the total sum of $15,000 and the workmen's compensation benefits amount to $10,000, he is entitled to the sum of $15,000, less $10,000, or the sum of $5,000. Allstate, on the other hand, maintains that Jarrett must deduct the $10,000 compensation benefits from the $10,000 policy limit, and accordingly, that he would not be entitled to anything. Under Jarrett's interpretation if the total damage amounted to $25,000 and the compensation benefits were in the sum of $10,000, he would be entitled to $10,000, because, while the difference between the amount of such damages and the amount of the benefits is $15,000, the most he can recover under the policy is its $10,000 limit. Applying Allstate's interpretation the same result would be reached by it as in the previous illustration.

The essence of Jarrett's argument is that Allstate has obligated itself to pay the difference between the sum specified in Clause A, which is not limited as to amount, and the amount specified in Clause C subject to the limitation that the total

amount payable to the insured shall not exceed the policy limit of $10,000. Allstate, on the other hand, urges the interpretation made by the trial judge to the effect that the sums specified in Clause A are limited to the amount referred to in Clause B, i.e., the policy limit of $10,000, from which policy limit the amount specified in Clause C is to be deducted and the balance, if any, paid to the insured as uninsured motorist coverage liability.

### Interpretation of Insurance Contracts

Certain fundamental rules have been evolved with reference to the interpretation of insurance contracts. Thus it is a well-established principle that each clause of an insurance contract must be considered with reference to every other clause on which it has any bearing and all of the provisions are to be construed together for the purpose of ascertaining the intent of the parties. (Civ. Code, § 1641; *New York Life Ins. Co.* v. *Hollender*, 38 Cal. 2d 73, 81 [237 P.2d 510]; *Jensen* v. *Traders & General Ins. Co.*, 52 Cal. 2d 786, 790 [345 P.2d 1]; *Sullivan* v. *Royal Exchange Assurance*, 181 Cal.App.2d 644, 646 [5 Cal.Rptr. 878].) The primary object is to ascertain and carry out the intention of the parties. (Civ. Code, § 1636; *New York Life Ins. Co.* v. *Hollender, supra*.) In construing insurance contracts, the standard to be used is the understanding of the ordinary person. (*Arenson* v. *National Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 83 [286 P.2d 816]; *Prickett* v. *Royal Ins. Co., Ltd.*, 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 262 P.2d 907]; *Artukovich* v. *St. Paul-Mercury Indem. Co.*, 150 Cal.App.2d 312, 324 [310 P.2d 461].) If any ambiguity or uncertainty exists an insurance policy is construed strictly against the insurer and most liberally in favor of the insured. (*New York Life Ins. Co.* v. *Hollender, supra*, 38 Cal.2d 73; *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]; *Arenson* v. *National Automobile & Cas. Ins. Co., supra*.) Where a policy provision is susceptible of two constructions, the one more favorable to the policyholder should be adopted. (*Bonfils* v. *Pacific Automobile Ins. Co.*, 165 Cal.App.2d 152, 159 [331 P.2d 766]; *Russ-Field Corp.* v. *Underwriters at Lloyd's*, 164 Cal.App.2d 83, 92 [330 P.2d 432].) The rule of strict construction against the insurer and liberal construction in favor of the insured is particularly applicable where the policy provides for exceptions to or exclusions from the general import of the

principal coverage clause. The burden rests on the insurer to phrase such exceptions and exclusions in clear and unmistakable language. (*Prickett* v. *Royal Ins. Co., Ltd.*, *supra*, 56 Cal.2d 234; *City of Santa Monica* v. *Royal Indem. Co.*, 157 Cal.App.2d 50, 54 [320 P.2d 136].) ■ This rule requiring all uncertainties, ambiguities, inconsistencies and doubtful provisions to be resolved against the insurer and in favor of the insured is subject to the important limitation, however, that it is applicable only when the policy actually presents such uncertainty, ambiguity, inconsistency or doubt. In the absence thereof, the courts have no alternative but to give effect to the contract of insurance as executed by the parties. ■ Accordingly, when the terms of the policy are plain and explicit the courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed. (*New York Life Ins. Co.* v. *Hollender*, *supra*, 38 Cal.2d 73, 81; *Jensen* v. *Traders & General Ins. Co.*, *supra*, 52 Cal.2d 786, 790-791; *Ogburn* v. *Travelers Ins. Co.*, 207 Cal. 50, 54 [276 P. 1004].)

### *Interpretation of the Instant Insurance Policy*

■ The construction of the instant contract is one of law because it is based upon the terms of the insurance contract without the aid of extrinsic evidence. Accordingly, we are not bound by the trial court's interpretation of it, but it is our duty to make the final determination in accordance with the applicable principles of law. (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]; *Ziganto* v. *Taylor*, 198 Cal.App.2d 603, 606 [18 Cal.Rptr. 229].) Our interpretation does, however, coincide with that made by the trial court.

Although the "Supplement Page" of the instant insurance contract is not included in the copy of the policy attached to the "Agreed Statement on Appeal" (Ex. 1), paragraph 2 of said statement sets forth as an agreed fact that the policy limits are "$10,000.00 for all damages sustained by one person under the 'uninsured motorist' clause contained in Coverage S of said policy." It is conceded, moreover, by the appellant in his briefs that such amount is the limit of liability, and that Allstate, accordingly, is not obligated to pay more than $10,000 for injuries to one person. This limitation is specifically made a part of Section II by Clause B which states that the limit of Allstate's liability for damages arising out of bodily injury "sustained by one person in any one accident" is the "limits of Allstate's liability stated on the Sup-

plement Page under Coverage S," i.e., $10,000. Clause B is thus complementary and not contradictory to Clause A. Indeed, it is further conceded by the appellant that although Clause A, the principal coverage clause, contains no limitation as to the amount which Allstate will pay, its liability is nevertheless limited by Clause B to the sum of $10,000. The appellant is thus in accord with the construction made by the trial court that, absent any of the considerations pertaining to workmen's compensation payments which are brought into play by Clause C, the amount to which an insured would be entitled to under this policy because of injuries caused to him by an uninsured motorist would be the amount of damages sustained by him up to but not to exceed $10,000.

The precise problem at bar, then, is the effect of Clause C where the insured has and is receiving workmen's compensation benefits for the injuries which have been caused him by the uninsured motorist. The essence of appellant's argument appears to be that because the word "loss" contained in Clause C is not anywhere defined in Section II an ambiguity arises as to its meaning which calls for a construction favorable to the insured.

In interpreting the meaning of "loss" as used in Section II we are not limited to the mere definition of the word, but to the context in which it is used in Clause C and the relationship of that clause to the others used in Section II. Clause C reads: "Any *loss payable* to any person under the terms of this Section II shall be reduced by the amount paid . . . under any workmen's compensation law." (Emphasis added.) It is not ambiguous or uncertain, but has obvious reference to the loss which is *payable* to the insured under the terms of Section II of the policy, and not to the loss which he suffers at the hands of the uninsured motorist. In the absence of circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense rather than according to their strict legal meaning. (Civ. Code, § 1644; *American Motorists Ins. Co.* v. *Moses,* 111 Cal.App.2d 344, 347 [244 P.2d 760]; *Oil Base, Inc.* v. *Transport Indem. Co.,* 143 Cal.App.2d 453, 462-463 [299 P.2d 952].) The word "loss" is one of common use in insurance parlance. Webster defines "loss" in connection with insurance as "injury, destruction, or damage in such a manner as to charge the insurer with a liability under the terms of the policy; . . ." (Webster's New Inter. Dict. (2d

ed. 1939).)　　　　In its broad sense it is synonymous with liability and was obviously so used here. (See *Fidelity etc. Co. v. Fireman's Fund Indem. Co.*, 38 Cal.App.2d 1, 7 [100 P.2d 364].)　　　　The word "payable" is defined as "[t]hat may, can, or should be paid; . . . [t]hat is to be paid (by any particular person); . . ." (*Webster*, supra.) Certainly an ordinary person would understand by a reading of the clause that the loss there referred to would not be the amount of the actual damages caused by the accident, but the amount of such damages which were to be paid *under the terms of Section II* of the policy. Jarrett concedes that he understood that he was not entitled to receive any amount over $10,000, even though his actual damages would be in excess of that sum. This, then, was the maximum loss payable to him under the terms of the policy and under the provisions of Section II.　　　　The loss referred to in Clause C obviously refers to the liability fixed by Clause A as limited by Clause B. It should be noted, also, that under the subtitle "Payment of loss" in Section II, it is stated "*All sums payable* because of bodily injury . . . are payable to the insured. . . ." (Emphasis added.) This clearly refers to "loss" as the sums *payable* under the terms of the policy
　　　　The appellant asks us to declare that the employer's lien (Lab. Code, § 3856) does not attach to the recovery under the " 'uninsured automobile' coverage" in order to preserve to Jarrett the benefits of the policy as interpreted herein. This was not an issue before the trial court. It is urged for the first time on appeal and therefore cannot be considered by us. Suffice it to say, however, Section II contains language under "Exclusions" which throws further light on the intention of the parties where workmen's compensation benefits are received by the insured. It is there provided as follows: "This Section of the Policy does not apply: . . . so as to enure directly or indirectly to the benefit of any workmen's compensation carrier or any person or organization qualified as a self-insurer under any workmen's compensation law." While we are not called upon to interpret this language as against the right of the workmen's compensation carrier to its lien, such language indicates that the parties did not intend to make a contract for the benefit of a third person, i.e., the compensation carrier, but that it was their intention that in any one accident involving an uninsured motorist the insured would receive the sum of at least $10,000 for his injuries.
　　　　Thus, under the terms of the policy, if the insured's

damages amounted to $10,000 and he received $5,000 compensation benefits. Allstate would be liable for $5,000. Or, stated another way, if the insured received $10,000 from the compensation carrier he would not be entitled to anything from Allstate. It should be noted, moreover, that the uninsured motorist coverage is not the only coverage afforded by the policy in question, but one of several, its purpose being to give its insured some modicum of compensation where he is injured at the hands of an uninsured motorist. If he is not compensated under workmen's compensation laws he is entitled to the damages sustained by him not to exceed $10,000. If he is so compensated, he is then entitled to receive the difference between the amount of his damages, not exceeding $10,000, and the amount of his compensation benefits.

The construction urged by Jarrett would force a construction which would fasten a liability upon Allstate which it has not assumed. To deduct the amounts specified in Clause C from Clause A would result in rendering Clause C meaningless in situations where the difference between the actual damages sustained and the amount of compensation benefits received amount to more than $10,000. In such cases, the insured would always be entitled to the policy limit of $10,000, and hence, the reduction of Allstate's liability to a sum under $10,000 as contemplated by Clause C would never occur.

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.