246 So.2d 58 (1970)
Judy Carolyn WILLIAMS, Plaintiff-Appellee,
v.
Warner C. BUCKELEW et al., Defendants-Appellants.
Judy Carolyn WILLIAMS Plaintiff-Appellant,
v.
Warner C. BUCKELEW, Sr. et al., Defendants-Appellees.
Nos. 11486, 11525.
Court of Appeal of Louisiana, Second Circuit.
September 15, 1970.
On Rehearing March 2, 1971.
*59 Stagg, Cady & Beard, by William M. Cady, III, Shreveport, for appellant-appellee.
Blanchard, Walker, O'Quin & Roberts, by Wilton H. Williams, Jr., Shreveport, for Warner C. Buckelew and The Travelers Ins. Co.
Lunn, Irion, Switzer, Johnson & Salley, by Harry A. Johnson, Jr., Shreveport, for Jimmy Duncan, William B. Duncan and State Farm Mut. Auto. Ins. Co.
Nelson & Evans, by William C. Clark, Shreveport, for Fidelity & Cas. Co. of New York.
Mayer & Smith, by Caldwell Roberts, Shreveport, for St. Paul Fire & Marine Ins. Co.
Before BOLIN, DIXON and WILLIAMS, JJ.
DIXON, Judge.
Judy Carolyn Williams was injured in an automobile accident. She was driving her Mustang. The other automobile was a 1956 Ford station wagon driven by Jimmy Duncan and owned by Warner C. Buckelew. The plaintiff brought her action against Warner C. Buckelew and his liability insurer, The Travelers Insurance Company, and against the driver of the Buckelew automobile, Jimmy Duncan, his father, William B. Duncan, and William B. Duncan's liability insurer, State Farm Mutual Automobile Insurance Company; in the alternative, the plaintiff asked for judgment against Fidelity and Casualty Company of New York, her own liability insurer, in the event the court decided that neither Travelers nor State Farm covered Jimmy Duncan.
There was a judgment in the district court for the plaintiff in the amount of $5652.67 against The Travelers Insurance Company up to its limits ($5100.00), and against Jimmy Duncan, William B. Duncan and State Farm Mutual Automobile Insurance Company, in solido, for the balance ($552.67). St. Paul Fire and Marine Insurance Company was also a party. St. Paul had paid the plaintiff $1837.67 as workmen's compensation benefits; the plaintiff was ordered to reimburse St. Paul for this amount. The district court rejected the demands of plaintiff against Warner C. Buckelew and Fidelity and Casualty Company of New York.
Travelers appealed; plaintiff appealed and answered the appeal, praying for an increase in the award against the Travelers, *60 or, in the event the judgment should be modified relieving the defendants cast in the district court, for appropriate relief against the other defendants.
Fidelity and Casualty also answered the appeal, praying that it have judgment over against Jimmy Duncan and William B. Duncan, in solido, should the judgment be modified in such a way as to cast Fidelity and Casualty Company.
The Duncans and State Farm did not appeal, nor did they answer the appeal.
The problem here is to decide which liability insurer, and which of those insured, should be cast for plaintiff's loss. No issue is made on this appeal concerning the liability of Jimmy Duncan, the driver of the Buckelew automobile. The accident was Jimmy Duncan's fault. In spite of Jimmy's fault, however, the trial court only cast Jimmy Duncan, along with his father and his father's insurer, State Farm, for $552.67. Jimmy was eighteen at the time of the accident and unmarried.
The appellants, Warner C. Buckelew and Travelers, contend that the trial court erred in casting them in judgment. The trial court found that Jimmy Duncan was an omnibus insured under the Travelers policy because, although he had been forbidden the use of the automobile by the owner, Warner C. Buckelew, Buckelew had placed such control of the automobile in his daughter Cathy that she had the implied authority to grant Jimmy Duncan permission to operate the car. The trial court also found, in its written opinion, that Cathy Buckelew had granted permission to Jimmy Duncan to operate the automobile. Cathy's testimony was that, on the occasion of the accident, Jimmy Duncan was operating the automobile without her permission. Cathy testified that she and Jimmy had been engaged in an argument, and she had forbidden Jimmy to drive, which prohibition he chose to ignore. The evidence is conclusive that Warner C. Buckelew and his wife and his older daughter had told Jimmy Duncan, on several occasions, not to drive the Buckelew automobile.
State Farm was found by the trial court to be an "excess insurer." State Farm was the liability insurer of William B. Duncan, the father of Jimmy, and its liability was predicated on the "non-owned automobile" section of the omnibus clause.
Both the Travelers policy and the State Farm policy contain similar provisions in the omnibus clauses. The Travelers policy, with respect to an automobile owned by the named insured (Warner C. Buckelew) defined as insured "any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission * * *."
The State Farm policy, with respect to an automobile not owned by its named insured (William B. Duncan) defined an insured as any relative of the named insured, "provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission * * *."
Cathy Buckelew lived with her family in Haughton, a few miles from Shreveport. She was eighteen years old and worked for the telephone company in Shreveport. Jimmy Duncan was her boy friend, and the two frequently used the 1956 Ford station wagon belonging to Cathy's father. Mr. Buckelew allowed his daughter to use the automobile in going to and from her employment. The evidence is uncontradicted that Cathy was not allowed to go and come as she pleased, but asked and received permission on each occasion when she wished to leave the family home and use the station wagon for purposes other than transportation to and from work. Mr. Buckelew had forbidden Jimmy to operate the car because he was of the mistaken impression that he would not be protected *61 by his liability insurer if he gave permission to Jimmy to drive. There is no way Jimmy could reasonably have understood that he had the permission, explicit or implied, to operate the Buckelew automobile on the occasion of the accident. As a matter of fact, Cathy and Jimmy tried, after the accident, to conceal the fact that Jimmy was driving at the time of the accident.
The trial court based its opinion, in casting Travelers, on American Home Assurance Company v. M. J. Czarniecki, 255 La. 251, 230 So.2d 253 (1970).
In that case, the automobile in question was registered in the name of Jesse G. Waters, stepfather of Randy Carroll, who had purchased the automobile with his own funds, paid the operating expenses and maintenance, had free use of the automobile, and used it regularly. Randy was friendly with Hans Gerteis, who had assisted Randy in repairing Randy's automobile in Hans' father's repair shop. On the night in question, Hans and his friend Charley Czarniecki planned to double date in Hans' automobile. However, Hans' car was out of order. Hans went to Randy's place of employment and borrowed Randy's car, telling him the object of its use, but not naming the occupants. Subsequently, on the double date, Hans loaned Randy's Chevrolet to Charley so Charley could take his date home. Charley had an accident.
The Supreme Court held that "the permission and authority delegated by him (Jesse G. Waters) to Randy for the use of the car was so broad and so free of restrictions that it may safely be said that Waters delegated to Randy whatever authority he had to grant permission to others to drive the car." Further, the court held that, since Randy was the actual owner and paid the maintenance and operation of the automobile from his own earnings, Randy was placed "in the position of the named insured."
The Supreme Court went on to find that there was no implication that Hans, the borrower of Randy's car, could lend the automobile to someone else, and such loan by Hans to Charley of Randy's car was not foreseeable.
The Czarniecki case differs from the one before us. The 1956 station wagon belonged to Warner C. Buckelew, and not to his daughter. He had specifically prohibited Jimmy Duncan from driving. There is no question in the case before us of authority to grant permission, because Jimmy Duncan was denied permission to operate the vehicle. Jimmy Duncan had no reason to believe that Cathy Buckelew possessed the authority to grant him permission to drive the automobile.
The tendency of our courts has been to broaden the coverage under the omnibus clause of liability policies. The policy of the state, articulated by the legislature (R.S. 22:655), is that liability policies are executed for the benefit of injured persons. Nevertheless, if we are to give any force to the "permission" phrase of the omnibus clause, in the absence of outright theft of the auto, we must recognize here that Jimmy Duncan did not have permission of any sort, and was not an insured under either policy.
Plaintiff-appellee argues that Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734 (1961) is controlling. There, William Oliver, III, with the permission of his father, the owner of the automobile, William J. Oliver, Jr., drove to the home of "Lad" Cazedessus for the purpose of double dating to a New Year's Eve dance. The boys decided to use one of the Cazedessus cars and to leave the Oliver automobile parked on the Cazedessus driveway. The keys of the Oliver car were left with fifteen-year-old Michael Cazedessus, in the event that it became necessary to move the Oliver automobile. Michael, about fifteen minutes later, took the Oliver car, drove it into the city, and was involved in the accident which gave rise to the litigation.
Fidelity and Casualty Company of New York was the insurer of William J. Oliver, *62 Jr. The Supreme Court held that only the named insured or his spouse, under the terms of the omnibus clause, could grant permission for the use of the automobile and thus constitute another person an insured, and that Michael Cazedessus was not an omnibus insured under the Fidelity and Casualty policy.
However, the two liability insurers of the father of Michael Cazedessus were cast under the "non-owned automobile" provision. The report of the case indicates that there is a difference between the "non-owned automobile" clause involved in the Rogillio case and the "non-owned automobile" clause in the State Farm policy before us. The clause before us requires the permission of the owner, or the reasonable belief by the driver that he has permission of the named insured. The holding in the Rogillio case with respect to the coverage under the omnibus clause of the policy issued to the owner of the automobile involved in the wreck is consistent with, and we consider controlling of, the liability of the Travelers. The portion of the Rogillio case that dealt with the "non-owned automobile" clause is not applicable, because the clauses in the policies involved are different.
Since we find no coverage by Travelers under the omnibus clause, and no coverage by State Farm under the "nonowned automobile" clause, Duncan was an uninsured motorist. Fidelity and Casualty, plaintiff's own liability insurer is therefore liable. Their liability is limited, however, to $5000.00. Fidelity and Casualty, in their answer to the appeal, prays for judgment over against Jimmy Duncan and William B. Duncan.
One appellee cannot, by an answer to an appeal, obtain an increased award against another appellee. Article 2133 of the Code of Civil Procedure, as amended, provides:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record, whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer." (Emphasis added).
The "comments" under the amended article state:
"Amended on the recommendation of the Louisiana State Law Institute to make it clear that an answer to an appeal can be used by an appellee only as to a judgment rendered against him and in favor of the appellant and cannot be used by an appellee to revise, modify or reverse a judgment rendered against the appellee and in favor of another appellee. The appellee's remedy in the latter situation is to take an appeal."
Plaintiff urges that her award be increased. She suffered a neck injury in the accident. Upon hospitalization, it was discovered that her eyes were crossed as a result of her injury. While receiving treatment for her injury and subsequently she suffered considerable pain and nausea. She was employed as an X-ray technician, and developed an adverse reaction to the lights with which she was required to work. She had not recovered at the time of the trial, and faced the possibility of further surgery to correct her disability. She was hospitalized for about twenty days, lost $1100.00 in wages, and, in short, suffered serious consequences from her neck injury.
In addition to the $1100.00 loss of wages, her medical expenses totaled $1452.67. She was entitled to the $100.00 deductible from her collision policy as the result of damage to her automobile. This means that the trial court awarded her *63 only $3000.00 for her injury. This amount should be increased by $5000.00.
There seems to be no question but that St. Paul Fire and Marine Insurance Company is entitled to reimbursement for workmen's compensation benefits paid to plaintiff.
State Farm Mutual Automobile Insurance Company was cast for $552.67 in the district court; there was neither an appeal nor an answer to the appeal by State Farm; therefore, this portion of the district court judgment has become final, as well as that portion of the district court judgment which casts Jimmy Duncan, William B. Duncan and State Farm Mutual Automobile Insurance Company for costs.
Therefore, the judgment appealed from (with the exception of that portion of the judgment affecting St. Paul Fire and Marine Insurance Company) is reversed, and there is now judgment in favor of the plaintiff, Judy Carolyn Williams, and against the defendants, Jimmy Duncan and William B. Duncan, in the amount of $10,652.67 with legal interest from date of demand; there is further judgment in favor of the plaintiff, Judy Carolyn Williams, and against Fidelity and Casualty Company of New York, as the uninsured motorist insurer of Jimmy Duncan, in the amount of $5000.00 with legal interest from date of demand, out of which St. Paul Fire and Marine Insurance Company is to be reimbursed $1837.67 for workmen's compensation benefits and medical expenses paid; plaintiff's demands against Warner C. Buckelew are rejected. Fidelity and Casualty Company of New York, Jimmy Duncan and William B. Duncan are cast for costs of this appeal.

ON REHEARING
Before AYRES, BOLIN, PRICE, HEARD and HALL, JJ.
HALL, Judge.
This suit arises out of an accident involving an automobile owned and driven by plaintiff, Judy Carolyn Williams, and a 1956 Ford station wagon driven by Jimmy Duncan and owned by Warner C. Buckelew. Plaintiff brought suit for damages against (1) Warner C. Buckelew and his liability insurer, The Travelers Insurance Company (2) Jimmy Duncan, his father, William B. Duncan, and William B. Duncan's liability insurer, State Farm Mutual Automobile Insurance Company, and alternatively, (3) Fidelity & Casualty Company of New York, plaintiff's own liability insurer in the event coverage was not afforded by either Travelers or State Farm, under the uninsured motorist provisions of the Fidelity & Casualty policy. St. Paul Fire & Marine Insurance Company intervened seeking reimbursement out of any judgment rendered in favor of plaintiff against Travelers, the Duncans or State Farm for $1,837.67, paid by St. Paul to plaintiff for workmen's compensation benefits.
The district court found that the sole proximate cause of the accident was the negligence of Jimmy Duncan and that plaintiff was entitled to damages in the amount of $5,652.67. Judgment was rendered in favor of plaintiff against Travelers in the amount of $5,100.00 (the amount of Travelers' policy limits) and against Jimmy Duncan, William B. Duncan and State Farm, in the sum of $552.67 (being the amount plaintiff was found entitled to recover in excess of Travelers' policy limits). The judgment further ordered plaintiff to reimburse St. Paul the sum of $1,837.67 out of the proceeds of the foregoing judgment for workmen's compensation benefits. Plaintiff's demands against Warner C. Buckelew and Fidelity & Casualty were rejected. Defendants, Travelers, Jimmy Duncan, William B. Duncan and State Farm, were cast for costs.
From this judgment Travelers perfected a suspensive appeal. Plaintiff appealed devolutively as to all defendants and answered Travelers' appeal praying for an increase in the award against Travelers and further praying for appropriate relief against other *64 defendants in the event the judgment should be modified on appeal so as to relieve any of the defendants cast in the district court. Fidelity & Casualty answered both appeals praying that it have judgment over against Jimmy Duncan and William B. Duncan, in solido, should the judgment be modified in such a way as to cast Fidelity & Casualty.
The Duncans and State Farm did not appeal nor answer either of the appeals.
This court in its original opinion held that neither Travelers nor State Farm provided insurance coverage and that, therefore, Duncan was an uninsured motorist. Fidelity & Casualty was held to be liable to the plaintiff to the extent of its $5,000.00 policy limits. This court further held that the award in favor of plaintiff should be increased from $5,652.67 to $10,652.67. Fidelity & Casualty was not allowed to recover over and against Jimmy Duncan and William B. Duncan for the reason that it had not appealed and cannot by way of answer to an appeal obtain an award against another appellee. This court further held that St. Paul is entitled to reimbursement for workmen's compensation benefits paid to plaintiff. Since State Farm did not appeal from the judgment in favor of plaintiff for $552.67, nor did it answer an appeal, that portion of the district court judgment became final as did the portion of the district court judgment casting Jimmy Duncan, William B. Duncan and State Farm for costs.
Accordingly, this court in its original opinion, reversed the district court judgment (with the exception of that portion of the judgment affecting St. Paul) and granted judgment in favor of plaintiff and against defendants, Jimmy Duncan and William B. Duncan in the amount of $10,652.67; and in favor of plaintiff and against Fidelity & Casualty in the amount of $5,000.00, out of which St. Paul is to be reimbursed $1,837.67. Plaintiff's demands against Warner C. Buckelew were rejected and Fidelity & Casualty, Jimmy Duncan and William B. Duncan, were cast for the costs of the appeal.
A rehearing was granted by this court on the application of plaintiff and Fidelity & Casualty. In its application and on rehearing, plaintiff urges that the original opinion is in error in holding that St. Paul is entitled to reimbursement for workmen's compensation benefits out of the judgment against Fidelity & Casualty, rather than out of the judgment against the third-party tortfeasors, Jimmy Duncan and William B. Duncan. Fidelity & Casualty urges that this court erred in failing to give it credit for the amount of workmen's compensation benefits paid to plaintiff in accordance with the provisions of its policy and in accordance with the holding of this court in Allen v. United States Fidelity & Casualty Company, 188 So.2d 741 (2nd Cir. 1966), writs refused 249 La. 743, 190 So.2d 909. Plaintiff, on the other hand, argues that to allow Fidelity & Casualty a credit for workmen's compensation benefits paid by St. Paul would, in effect, reduce the policy limits below the minimum amount required by R.S. 22:1406(D) (1).[1]
*65 On rehearing, counsel for St. Paul concedes that St. Paul is not entitled to be reimbursed for workmen's compensation benefits paid out of any judgment against Fidelity & Casualty but is only entitled to reimbursement out of the proceeds of the judgment against the Duncans. Thus, there is no issue to be decided by the court in this regard, but the judgment should be modified accordingly.
The only issue before the court on rehearing is whether the judgment in favor of plaintiff against Fidelity & Casualty should be modified and reduced so as to allow Fidelity & Casualty a credit against its policy limits of $5,000.00, for the amounts paid by St. Paul to plaintiff for workmen's compensation benefits. This issue was not previously argued or briefed by counsel nor considered by this court.
In connection with its uninsured motorist coverage, the Fidelity & Casualty policy contains the following provisions:
"Limits of Liability
(a) * * *
(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person who is an insured under this Part shall be reduced by
(1) * * *
and
(2) The amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."
The issue presented on rehearing was squarely decided by this court in the Allen case cited supra. In Allen this court held that under policy provisions identical with those involved in this case, the uninsured motorist carrier is entitled to a credit against its policy limit for any amounts paid to its insured for workmen's compensation benefits. This court held that the provisions of the policy must be given effect as written and that the provisions were not contrary to or in conflict with R.S. 22:1406(D) (1).
This court, sitting en banc, has carefully reviewed and reconsidered the decision rendered by the three-judge panel in the Allen case. We have concluded that the legal issue there decided and presented for decision again in this case should have been and should be resolved differently. It is our opinion that the provisions of the uninsured motorist portion of the liability policy quoted above, as applied to the facts of this case, are contrary to the express requirement of R.S. 22:1406(D) (1) that liability policies provide uninsured motorist coverage "in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana."
The direct effect of allowing Fidelity & Casualty a credit for workmen's compensation benefits received by plaintiff against the $5,000.00 policy limits is to reduce the limits of the policy below the amount required by statute. An insurance company may, in the absence of statutory provisions to the contrary, limit its liability and impose conditions on its obligations not inconsistent with public policy. But here the limitation written into the policy is directly contrary to the affirmative legislative declaration establishing minimum limits of coverage in uninsured motorist policies.
The view now expressed by this court is supported by authority from other states.
Southeast Title and Insurance Company v. Austin, 202 So.2d 179 (Fla., 1967), involved a Florida statute substantially identical to the Louisiana statute and policy provisions substantially identical to those under consideration here. The Florida Supreme *66 Court held that the provisions of the insurance policy providing for credit for workmen's compensation benefits paid were in conflict with both the express and implied requirements of the law. The court held:
"* * * the statutory limitations control and become a part of contracts subject to their terms. To the extent, therefore, that the appellant's policy purports to reduce liability for any loss within the statutory minimum required coverage, it is ineffective and there did not come into existence any contractual obligation subject to impairment. The legislative prescription of a minimum `coverage' obviously contemplates an effective coverage for losses up to the specified amount, the express statutory intent being to provide that protection to exactly the same extent that a policyholder is `legally entitled to recover damages' from a third party uninsured owner, or more, no less. * * *"
In a prior Florida case, Standard Accident Insurance Company v. Gavin, 184 So. 2d 229, 24 A.L.R.3rd, 1359 (Fla.App. 1966), cert. dismissed Fla., 196 So.2d 440, the court held the workmen's compensation credit provisions of the policy totally void in a situation where plaintiff was entitled to compensation benefits of over $10,000.00, the policy limits were $20,000.00, and the statutory minimum coverage was $10,000.00. In dismissing the petition for certiorari, the Florida Supreme Court stated:
"* * * that certain provisions of the insurance policy, if given effect, would reduce the minimum benefits below that required by the provisions of Section 627.0851(1), Florida Statutes, F.S.A. Such policy provisions being in conflict with and repugnant to the requirements of the statutory law, the insurance policy would be construed and applied as if such limiting conditions were not contained therein. * * *"
The Oregon Supreme Court, in Peterson v. State Farm Mutual Automobile Ins. Co., 238 Or. 106, 393 P.2d 651 (1964), held that a similar policy provision approved by the State Insurance Commissioner was void and that the Commissioner had acted beyond the scope of his authority. The court held:
"We must look, then, to the uninsured motorist act itself to discover the purpose of the law and thus to determine the limits of the Commissioner's authority in this particular case."
"* * * Insurance policy provisions imposing a lesser obligation on the insurer than that required by statute are unenforceable. * * *."
"In this case the insurance is required by statute. The statute requires the insurer to assume the obligation to provide coverage for an insured who is legally entitled to recover damages from an uninsured motorist because of injuries or death. The statute requires that the extent of this protection, i. e., limits, be not less than in policies listed as proof of financial responsibility. The Financial Responsibility Act requires limits of $5,000 for injury or death to one person, and $10,000 for injury or death to two or more persons. ORS ch. 486. The legislature did not further describe the coverage of the statute. However, we note that the Financial Responsibility Act, referred to specifically in the uninsured motorist provision, contains no provision regarding the effect of the receipt of workmen's compensation benefits by the injured party.
"The basic purpose of the uninsured motorist provision seems clear. It provides protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists. See Note, 2 Will. L.J. 56, 61 (1962); Commissioners of the State Insurance Fund v. Miller, 4 A.D. *67 2d 481, 166 N.Y.S.2d 777, 779 (1st Dept. 1957). In other words, the legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position he would have been in if the tortfeasor had had liability insurance."
In Carter v. Saint Paul Fire and Marine Insurance Company, 283 F.Supp. 384 (E.D. Ark., 1968), a Federal District Court held the same policy provisions allowing for workmen's compensation benefits invalid as being contrary to the purpose of the Arkansas statute, which is to provide a basic minimum coverage against the actions of financially irresponsible motorists. The court held:
"Summing up, we are of the opinion that if provisions such as those involved in these three cases are held to be valid the purpose of the Arkansas statute, which is to provide a basic minimum coverage against the actions of financially irresponsible motorists, would be frustrated. This basic coverage may not be abrogated nor diminished by the `small print' in an insurance contract."
The statutes involved in the Florida, Oregon and Arkansas cases are all substantially identical to the Louisiana statute requiring uninsured motorist coverage to be provided in limits of not less than the amounts referred to in the Financial Responsibility Law.
Two other Arkansas cases sustained the validity of the workmen's compensation credit clause, but both of these cases involved accidents which occurred prior to the adoption of the Arkansas statute prescribing minimum limits for uninsured motorist coverage and, therefore, involved only questions of interpretation of the policy provisions and not consideration of whether the policy provisions were contrary to statutory law. See Pinkus v. Southern Farm Bureau Casualty Insurance Company, 292 F.Supp. 141 (E.D.Ark., 1968) and M. F. A. Mutual Insurance Company v. McKinley, 432 S.W.2d 484 (Ark., 1968).
In Allen, this court cited Niekamp v. Allstate Insurance Company, 52 Ill.App. 2d 364, 202 N.E.2d 126 (1964) and Jarrett v. Allstate Insurance Company, 209 Cal. App.2d 804, 26 Cal.Rptr. 231 (1962) as authority for upholding the validity of the policy clause under consideration. In Niekamp, the appellate court of Illinois held that the uninsured motorist carrier was entitled to credit for workmen's compensation benefits paid to the plaintiff under the clear and unambiguous provisions of the policy and in spite of the fact that plaintiff would be required to reimburse his workmen's compensation carrier out of the proceeds of a settlement to be received from a third motorist. No reference was made in the opinion to any Illinois statute requiring minimum limits of uninsured motorist protection and no issue was raised by the plaintiff that the provisions of the policy were contrary to any Illinois statute.
Similarly, Jarrett did not involve a statute requiring minimum limits for uninsured motorist coverage. The validity of the credit clause was not challenged and the issue in that case was whether the credit should be allowed against the total damages to which plaintiff was entitled or against the policy limits which were less than the total damages. The court held that the credit should be applied against the policy limits rather than the total damages.
On the issue involved in the Jarrett case, the court of appeals of Michigan reached a contrary result in Michigan Mutual Liability Company v. Mesner, 2 Mich.App. 350, 139 N.W.2d 913 (1966). The court did not deal with the question of the validity of the credit clause but held that the clause did not have the effect of reducing the insurer's limits of liability but only reduced the total amount of damages to which plaintiff was entitled.
We do recognize, however, that there is authority contrary to the position we now take and supporting the position expressed in Allen. In Ullman v. Wolverine Insurance Company, 244 N.E.2d 827 (1969) the *68 appellate court of Illinois dealt with the exact issue involved here and held that the deduction of workmen's compensation benefits provision is valid because its effect places the insured in an equivalent position to that which he would have occupied had the tortfeasor been insured with minimum coverage. The court reasoned that if the third-party tortfeasor had the minimum required liability insurance the plaintiff nevertheless was required under Illinois law to reimburse his compensation carrier from any recovery from a third-party tortfeasor and, therefore, his net recovery would be the same against a third-party tortfeasor with minimum limits of liability insurance as it would be against his uninsured motorist carrier with minimum limits after giving credit for workmen's compensation benefits paid. The court stated that the purpose of the statute requiring uninsured motorist coverage was to place the injured insured in substantially the same position he would have occupied had the offending party complied with the minimum requirements of the Financial Responsibility Act.
The Supreme Court of New Hampshire reached the same result in Hackman v. American Mutual Liability Insurance Co., 261 A.2d 433 (1970).
In both Ullman and Hackman the court distinguished the Oregon and Florida decisions on the basis that the compensation statutes in Oregon and Florida did not provide for one hundred per cent reimbursement by an injured party to his compensation carrier and, therefore, the "net" effect is different.
While the effect of not allowing the credit for workmen's compensation benefits paid may be to permit an injured person to have a "net" recovery greater in the case where the tortfeasor is uninsured than in the case where the tortfeasor has the minimum $5,000.00 policy limits this is not an unreasonable or inconsistent result. First of all the liability of a third-party tortfeasor or his liability insurer is not reduced or diminished because of workmen's compensation benefits paid to the plaintiff. They are liable for his full damages (the insurer's liability being limited, of course, to its policy limits). The right given by the workmen's compensation law to an employer and its compensation carrier to intervene or to seek reimbursement from the injured plaintiff for compensation benefits paid can and usually does serve to reduce the plaintiff's "net" recovery but does not reduce the plaintiff's right against the third-party tortfeasor or his liability insurer. Be that as it may, we believe that the statute is clear in its affirmative requirement that uninsured motorist coverage be provided with minimum limits of $5,000.00 and that the clause under consideration here, insofar as it serves to reduce the policy limits below that amount, is invalid. There is no question of "double" recovery here in that the total amount of plaintiff's damages substantially exceed defendant's policy limits plus the compensation benefits paid.
We hold that the provisions of the uninsured motorist policy providing for credit for workmen's compensation benefits paid are invalid where as in this case, the effect of such provisions would be to reduce the policy limits below the minimum required by R.S. 22:1406(D) (1). To the extent that the Allen case held otherwise that case is overruled.
Our original judgment is amended so as to limit St. Paul's right of reimbursement to the proceeds of the judgment against Jimmy Duncan and William B. Duncan. Otherwise, our original judgment is reinstated.
AYRES, Judge, concurs in the decree for the reason that an injured person's employer's workmen's compensation insurer is entitled to reimbursement of compensation paid only from the injured employee's award of damages against the tortfeasor or the feasor's liability insurer and not, as here, from insurance coverage obtained by *69 the employee personally and individually and which has no relationship to her employment. (Workmen's Compensation Statute, LSA-R.S. 23:1101, 23:1102, and 23:1103.)
NOTES
[1] R.S. 22:1406(D) (1) provides:

"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."
The Motor Vehicle Safety Responsibility Law provides, in part, for policy limits "of not less than five thousand dollars because of bodily injury to or death of one person in any one accident * * *." (R.S. 32:872).