[No. A051533. First Dist., Div. Three. Oct. 31, 1991.]

FRANCIS P. McGREEHAN, Plaintiff and Respondent, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION, Defendant and
Appellant.

## COUNSEL

Morton, Lulofs & Allen, Larry E. Lulofs and Michael Charles Comyns for Defendant and Appellant.

Oy-Lene Chong and James T. Linford for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—Respondent Francis P. McGreehan (McGreehan) filed the instant action for declaratory relief against appellant California State Automobile Association (CSAA) to resolve a coverage question under the uninsured motorist provisions of his automobile insurance policy. CSAA appeals from a summary judgment entered in McGreehan's favor. We reverse.

### I

The essential facts are undisputed. McGreehan, in the course of his employment, was struck by a vehicle driven and owned by an uninsured motorist. At the time of the accident, McGreehan was insured by CSAA under an automobile liability insurance policy which included uninsured motorist coverage in the amounts of $30,000 per person and $60,000 per occurrence. McGreehan received workers' compensation benefits in the amount of $28,817.62. Claiming that his total estimated damages are in excess of $75,000, he filed a claim with CSAA in the amount of the policy limit, $30,000. However, CSAA rejected the claim stating that under the terms of the policy it had a right to offset its liability with the workers' compensation benefits received by McGreehan. On this basis, CSAA calculated that it was liable to pay only $1,182.38.

McGreehan filed the instant action for declaratory relief seeking a judicial determination as to this issue. Thereafter, he filed a motion for summary judgment. Following a hearing, the court granted the motion finding, as a matter of law, that under the terms of the policy, workers' compensation benefits are to be deducted from the total amount of damages to which respondent is entitled to recover from the uninsured motorist as a result of the accident and not merely from the policy limits. A subsequent motion for reconsideration filed by CSAA was denied and this appeal followed.

### II

At issue is part IV of the CSAA policy entitled "UNINSURED MOTORISTS." Specifically of concern are two sections contained therein and

how they relate to one another. The first of these sections, entitled "Coverage D—Uninsured Motorists Coverage" (coverage section), states in pertinent part: "*We* will pay damages for *bodily injury* which an *insured person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*. The *bodily injury* must be caused by accident and arise out of the ownership, maintenance or use of the *uninsured motor vehicle.*"

The second section, entitled "Limits of Liability" (limits of liability section), provides, inter alia: "The limits of liability shown in the Declarations [i.e., $30,000 per person and $60,000 per occurrence] apply, subject to the following: (1) the limit for 'each person' is the maximum for *bodily injury* sustained by any person in any one accident; (2) subject to the limit for 'each person,' the limit for 'each accident' is the maximum for *bodily injury* sustained by two or more persons in any one accident. [¶] *We* will pay no more than these maximums regardless of the number of vehicles described in the Declarations, *insured persons*, claims, claimants or policies or vehicles involved in the accident."

The third paragraph of the limits of liability section, which we will hereafter refer to as "the offset clause," then states: "*Any amounts payable will be reduced by:* . . . (3) any payment made or amount payable because of the bodily injury under any workers' compensation law . . . ." (Italics added.)

McGreehan admits that the terms of the policy call for an offset in the amount of the workers' compensation benefits received. However, he argues for an interpretation of the policy whereby the offset is applied to the total amount of damages to which he is entitled to recover from the owner or operator of the uninsured motor vehicle. Under his interpretation, the offset clause contained in the third paragraph of the limits of liability section, would be applied to the unlimited "damages" referred to in the coverage section.

CSAA, on the other hand, argues for an interpretation of the policy whereby the subject offset is applied against the policy limits. Under its interpretation, the unlimited damages referred to in the coverage section would be modified by the policy limits set forth in the first paragraph of the limits of liability section. The offset clause would then be applied against these policy limits.

## III

■    Preliminarily, we note our standard of review. The construction of the instant contract is one of law because it is based upon the terms of the

insurance contract without the aid of extrinsic evidence. Accordingly, we are not bound by the trial court's interpretation, but it is our duty to make the final determination in accordance with the applicable principles of law.

The contractual provisions at issue in this case were drawn in compliance with California's uninsured motorist statute, Insurance Code section 11580.2. First enacted in 1959, the statute mandates that every automobile insurance contract contain a provision providing coverage for the insured against injury by an uninsured or underinsured motorist. The insured contributes directly to this fund through automobile insurance premiums. The amount of coverage is specified by statute (§ 11580.2, subd. (m)) and can be reduced or eliminated only by written agreement in a form approved by the statute (§ 11580.2, subd. (a)(1)-(2)).

Section 11580.2 authorizes insurers to include certain offsets within their policies. Relevant here is subdivision (h) which states: *"Any loss payable* under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced: [¶] (1) By the amount paid and the present value of all amounts payable to him or her, his or her executor, administrator, heirs, or legal representative under any workers' compensation law, exclusive of nonoccupational disability benefits." (Italics added.)

The same issue raised by the parties herein was addressed squarely in *Jarrett v. Allstate Ins. Co.* (1962) 209 Cal.App.2d 804 [26 Cal.Rptr. 231]. *Jarrett* involved an automobile liability insurance policy with uninsured motorist coverage provisions similar to those at issue in the instant case, contained in "Section II" of that policy. As in the case at bar, these provisions began with a general statement of coverage wherein Allstate promised to pay " '. . . all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such automobile.' " This language was then followed by a subsection limiting Allstate's liability for "each person" to " 'the limit of Allstate's liability for all damages arising out of bodily injury sustained by one person in any one accident . . . .' " The limits of liability section of Allstate's policy also similarly provided an offset for workers' compensation: " '*Any loss payable* to any person under the terms of this Section II shall be reduced by the amount paid and the present value of all amounts payable to him under any workmen's compensation law.' " (*Id.,* at p. 807, italics added.)

As here, the plaintiff in *Jarrett* was injured by an uninsured motorist while working. His total damages exceeded his policy limit for uninsured motorist coverage. He contended that, under the terms of his policy, the workers'

compensation benefits he received should be deducted from the total amount of damages. Allstate, on the other hand, took the same position as CSAA in the instant case, arguing that the benefits should be deducted from the amount of damages suffered up to the policy limit.

■ Before analyzing the issue, the *Jarrett* court enunciated the following ground rules for interpreting insurance contracts: Each clause of an insurance contract must be considered with reference to every other clause on which it has any bearing and all of the provisions are to be construed together for the purpose of ascertaining the intent of the parties. The primary object is to ascertain and carry out the intention of the parties. In construing insurance contracts, the standard to be used is the understanding of the ordinary person. If any ambiguity or uncertainty exists, an insurance policy is construed strictly against the insurer and most liberally in favor of the insured. This rule requiring all uncertainties, ambiguities, inconsistencies and doubtful provisions to be resolved against the insurer and in favor of the insured is subject to the important limitation, however, that it is applicable only when the policy actually presents such uncertainty, ambiguity, inconsistency or doubt. In the absence thereof, the courts have no alternative but to give effect to the contract of insurance as executed by the parties. When the terms of the policy are plain and explicit, the courts will not opt for a forced construction so as to fasten a liability on the insurance company which it has not assumed. (*Jarrett* v. *Allstate Ins. Co., supra,* 209 Cal.App.2d at pp. 809-810.)

Applying these principles to the case before it, the *Jarrett* court found the limits of liability section of the policy "complementary and not contradictory" to the coverage section. Noting that the limits of liability section incorporated by reference the policy's uninsured motorist coverage limit of $10,000 per person, the court said that whereas the principal coverage clause contained no limitation as to the amount Allstate would pay, its liability was nevertheless limited by the limits of liability section to the sum of $10,000.

Proceeding to what it considered the real issue at hand—that is, the effect of the offset clause, the *Jarrett* court said: "Certainly an ordinary person would understand by a reading of the clause that the loss there referred to would not be the amount of the actual damages caused by the accident, but the amount of such damages which were to be paid *under the terms of Section II* of the policy. [Plaintiff] concedes that he understood that he was not entitled to receive any amount over $10,000, even though his actual damages would be in excess of that sum. This, then, was the maximum loss

payable to him under the terms of the policy and under the provisions of Section II." (*Jarrett* v. *Allstate Ins. Co.*, *supra*, 209 Cal.App.2d at p. 812.)

Rejecting the insured's claim of an ambiguity in the phrase "any loss payable," the court said, "[W]e are not limited to the mere definition of the word ["loss"], but to the context in which it is used in [the offset clause] and the relationship of that clause to the others used in Section II." (*Jarrett* v. *Allstate Ins. Co.*, *supra*, 209 Cal.App.2d at p. 811.) Said the court, "It is not ambiguous or uncertain, but has obvious reference to the loss which is *payable* to the insured under the terms of Section II of the policy, and not to the loss which he suffers at the hands of the uninsured motorist." (*Ibid.*) Considering the ordinary and plain meaning of the word, the court said that "loss" was synonymous with the word "liability" and "was obviously so used here." (*Id.*, at p. 812.)

■ Turning to the case at bar, we find the uninsured motorist provisions of the CSAA policy strikingly similar to those of the Allstate policy in *Jarrett*, rendering them susceptible to the same interpretation. As in *Jarrett*, the limits of liability section of the instant policy incorporates by reference the policy's uninsured motorist coverage limits—in this case, $30,000 per person and $60,000 per occurrence—and modifies the unlimited damages referred to in the preceding coverage section. The real issue here, as in *Jarrett*, is the offset clause and how it relates to these provisions.

As to this, we think it instructive to examine the offset clause in context. Doing so, we find that it is located in the third paragraph of the section entitled "Limits of Liability." Immediately preceding the clause is the second paragraph of the section which begins, "*We* will pay no more than these maximums . . . ." The "maximums" referred to therein, meanwhile, are the policy limits set forth in the first paragraph of the section. It seems clear that an ordinary person reading the CSAA offset clause would understand that the reduction for workers' compensation is to be applied against the policy limits described in the first two paragraphs of the same section. Stated another way, it seems likely that anyone reading the statement "[a]ny amounts payable will be reduced by . . . any payment made or amount payable because of the *bodily injury* under any workers' compensation law . . . ," would understand that it refers to the liability fixed by the coverage section as limited by the limits of liability section.

McGreehan would have us differentiate the instant case from *Jarrett* based on a slight variation in language. The offset clause in *Jarrett* states that "*any*

*loss payable*" shall be reduced by workers' compensation benefits received by the insured whereas the offset clause in the instant case states that "[a]ny amounts payable" will be reduced by such benefits. The language of the policy in *Jarrett* tracks the language of section 11580.2, subdivision (h). McGreehan maintains that the phrase "any amounts payable" is inherently ambiguous inasmuch as it differs from the language of the statute. Adding to the confusion, he says, is the fact that the term is undefined by the policy and unaccompanied by any qualifying language. McGreehan asserts, "A layperson reading the present policy would find that the structure of the policy and the placement of clauses give rise to a reasonable interpretation that the permissive reductions are from amount of damages and not [the] policy limit[s]."

However, McGreehan places too much emphasis on the fact that the policy's language is not identical to that used in Insurance Code section 11580.2, subdivision (h). We know of no authority, and respondent cites none, which states that in order to be found in conformance with a given statute, an insurance policy must adopt the specific language of that legislation. It is apparent that the term "any amounts payable," as used here, and the term "any loss payable," as used in the policy in *Jarrett*, are virtually interchangeable. Both are synonymous with "liability" in their broad sense and were clearly used in this fashion.

McGreehan attempts to bolster his position by pointing to other sections of the CSAA policy wherein the term "any amounts payable" is accompanied by qualifying language such as "under this Coverage," or "under this Part." He argues, "No such qualification of the phrase . . . was used in Part IV's Uninsured Motorist Coverage. It merely stated 'any amounts payable.' " However, while the use of qualifying language might have served to further clarify the subject language, it was not necessary. As we have already discussed, it is clear from the context in which the subject phrase is found, as to what it relates.

McGreehan also points to the final paragraph of the limits of liability section, not previously quoted, which provides that where the insured has valid and collectible automobile medical payments insurance available to him, *the damages* which he shall be entitled to recover from the owner or operator of an uninsured motor vehicle shall be reduced for purposes of uninsured motorists coverage by the amounts paid or due to be paid under such automobile medical insurance. On the basis of this paragraph, he argues that a layperson could reasonably believe that the term "[a]ny amounts payable" refers to the amount payable as damages. Again, respondent ig-

nores the context of these clauses. The last paragraph, if anything, undermines his position since it makes apparent the fact that the policy differentiates between the terms "any amounts payable" and "damages."

Finally, McGreehan seems to harbor a basic misunderstanding of *Jarrett* and the holding therein. He says if we adopt CSAA's interpretation of the phrase "any amounts payable," it will lead to a variation in the meaning of that language depending upon the amount of damages in any given case. Respondent gives the following example: "[W]here a policy provided $30,000 limits, if the damages an insured suffered in an accident [were $15,000] and he recovered $5,000 in workers['] compensation benefits, he would understand that he subtracts his workers['] compensation benefit[s] from his damages of $15,000 so that his recovery would only be $10,000 under the policy. . . . [¶] It would be unreasonable for an insured to construe the policy as meaning that he subtracts workers['] compensation from the policy limit of $30,000, leaving him available coverage of $25,000. . . . [¶] However, that is the method of deduction [CSAA] would employ if the damages exceed the policy limit. In the present case, CSAA would deduct $28,800+ from $30,000, leaving available coverage of only $1,200+."

What respondent fails to see is that in either case—that is, whether the damages exceed policy limits or not—the policy requires workers' compensation benefits to be deducted from the total amount of damages, *up to the policy limit.* As found by *Jarrett,* the "loss payable" cited in the offset clause refers to the liability fixed by the general statement of coverage as limited by the subsection limiting the insurer's liability. (*Jarrett* v. *Allstate Ins. Co., supra,* 209 Cal.App.2d at p. 812.) Accordingly, we disagree that CSAA's interpretation of the instant policy leads to variable meanings.

Finally, as explained by one appellate court, "By permitting the parties to an uninsured motorist insurance policy to contract for a reduction of the loss payable '[b]y the amount paid and the present value of all amounts payable . . . under any workmen's compensation law . . .' (Ins. Code, § 11580.2, subd. (h)), the Legislature has made plain that there shall be no double recovery under the policy and under the workmen's compensation law when the parties have so agreed." (*Waggaman* v. *Northwestern Security Ins. Co.* (1971) 16 Cal.App.3d 571, 579 [94 Cal.Rptr. 170].)

In the case at bar, it is clear that the parties so agreed. We find no uncertainty, ambiguity or inconsistency in the language of the CSAA policy in this respect.

Summary judgment and the order granting plaintiff's motion for summary judgment are reversed. Appellant is awarded costs on appeal.

White, P. J., and Strankman, J.,* concurred.

A petition for a rehearing was denied December 2, 1991, and respondent's petition for review by the Supreme Court was denied February 19, 1992.

---

*Presiding Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.